**Charles SMITH, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 33S00–9911–CR–644.**

Supreme Court of Indiana.

Sept. 10, 2001.

John Pinnow, Special Assistant to the State Public Defender, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Charles Smith was convicted of murder for shooting his cousin and slitting his throat. He argues that the trial court improperly prevented him from contending that another person was the killer when it excluded evidence that the victim had threatened his wife's family and had used drugs. We affirm his conviction, finding the evidence he sought to present not relevant because it did not suggest the existence of another suspect.

*Background*

The facts favorable to the judgment indicate that on August 30, 1998, Defendant Charles Smith and his friends Verlie and Bruce Hinton, Joshua Hinton, Barbara Reno, and Tammy Denny gathered at the Hintons' residence. Tammy began discussing her marital problems. Defendant and her husband, Melvin Denny, were cousins. In particular, she revealed that Melvin verbally abused her and her children. Bruce Hinton and Defendant contemplated whether Melvin had been molesting Tammy's children. Defendant began striking his fist against his hand and said that something had to be done. He told Reno that "everything's going to be alright." (R. at 2197 98.) And he informed Joshua Hinton that he was going to "take care of business." (R. at 2259.)

The next morning at approximately 2:00 a.m., Defendant appeared at the residence

of Melinda Westrater, the niece of his then-girlfriend, Sheila Pierce. Defendant told Westrater that one of his family members had been killed and that no one else in the family had been notified. Defendant also stated that his relative's throat had been "slashed."

That evening, Defendant went to the residence of Mandy Ashley, another of Defendant's cousins. Defendant told Ashley that he was in trouble and that he was going to leave town. Defendant admitted that he had "offed" someone. Defendant revealed that that person was his cousin. When Ashley thought Defendant was joking, Defendant said that because he had "already 'offed' one family member," she could be next. (R. at 2387.) He continued with his confession, explaining that he rode to the victim's house on his bicycle, emptied his gun into his head, and cut his throat. He stated that the victim deserved to die because the victim was a child molester. Defendant also told Ashley that he took that personally because he had also been molested as a child.

That night, Tammy's sister, Debbie Thatcher, and Debbie's fiancé, Ryan Gross, found Melvin dead inside his home. Melvin had died from multiple gunshots to the head and suffered a laceration to the throat. During a warrant search of Defendant's house, officers discovered several .22 caliber rifles but found no murder weapon. The officers did find shell casings that matched the type of weapon used to commit the killing.

The State charged Defendant with Murder[1] and with being a Habitual Offender.[2] A jury found Defendant guilty of murder. Defendant pled guilty to the habitual offender charge. A trial court sentenced Defendant to a total of 95 years imprisonment.

Additional facts will be recited as necessary.

*Discussion*

I

Defendant contends that the trial court committed reversible error when it excluded evidence showing "that [the] murder victim Melvin Denny had repeatedly threatened his mother-in-law and other members of his wife's family." Appellant's Br. at 17. He argues that such evidence was relevant to establish that members of the victim's wife's family had a motive to kill and thus made it less probable that Defendant committed the killing. *See id.* at 15, 21.

█ Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. In the context of Defendant's claim here, we have said that "evidence which tends to show that someone else committed the crime logically makes it less probable that the defendant committed the crime, and thus meets the definition of Rule 401." *Joyner v. State*, 678 N.E.2d 386, 389 (Ind. 1997), *reh'g denied.* We review a trial court's determination of admissibility for an abuse of discretion and will reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* at 390.

After the trial court granted the State's motion *in limine* excluding evidence of alleged threats made by the victim to his wife's family, Defendant tendered the following: (1) Ryan Gross's testimony that he had heard from an unidentified person that the victim had threatened to hit Thatcher;

---

**1.** Ind.Code § 35–42–1–1 (1998).

**2.** *Id.* § 35–50–2–8.

(2) Reno's testimony that Tammy told Reno that the victim had previously threatened to shoot his mother-in-law; and (3) Verlie Hinton's testimony that the victim threatened his mother-in-law and brother-in-law. *See* Appellant's Br. at 19–20. Defendant also argues that the "trial court's categorical and arbitrary exclusion of relevant and competent evidence that [the victim] repeatedly threatened members of his wife's family prevented [him] from presenting his defense that other people had the motive and opportunity to kill the victim." Appellant's Br. at 27.

■ Defendant cites to our decision in *Joyner* in support of his contention that this evidence should have been admitted to show that another person may have committed the crime. But in *Joyner*, the defendant had sought to present specific factual evidence concerning a possible other suspect, the possible other suspect's having been seen with the victim, and an argument between the possible other suspect and the victim. *See Joyner*, 678 N.E.2d at 389–90. In this case, Defendant only sought to present (mostly hearsay) evidence of various threats made by the victim himself; there was absolutely no effort to present any evidence of any behavior by any other person suggesting the existence of another suspect. In sum, there is nothing in the fact standing alone of the victim having made threats that suggests the existence of another suspect. For that reason, the evidence Defendant sought to present falls well short of the test for admissibility enunciated by *Joyner*. *See also Cook v. State*, 734 N.E.2d 563, 568 (Ind.2000), *reh'g denied; Hauk v. State*, 729 N.E.2d 994, 1001–02 (Ind.2000); *McIntyre v. State*, 717 N.E.2d 114, 123–24 (Ind.1999), *reh'g denied.*

## II

Defendant makes a similar claim in respect of his assertion that the trial court committed reversible error when it excluded evidence of the victim's drug use because "part of [his] defense was that [the victim's] drug use played a role in his death." Appellant's Br. at 28. He argues that such evidence would have allowed him to put on a proper defense that the victim's "drug use rather than his alleged mistreatment of his children led to his death." *Id.* at 30.

In support of this argument, Defendant sought to introduce at trial the following evidence of the victim's alleged prior drug use: (1) Ryan Gross's testimony that he had once observed the victim smoke marijuana and that the victim had told him that he had previously used heroin; (2) John Hicks's testimony that he had smoked marijuana with the victim; (3) Debbie Thatcher's testimony that she had seen the victim smoke marijuana; and (4) Verlie Hinton's testimony that the victim told her that he had "50 dollars worth" and she presumed that the victim was referring to drugs. The trial court sustained the State's objection, ruling such evidence as irrelevant.

■ We find that excluding evidence of the victim's alleged drug use was proper. As in the preceding section, Defendant's asserted purpose in presenting this evidence was to suggest that persons other than the Defendant had a motive to kill the victim. But much like the threats against in-law evidence, Defendant only sought to present evidence of drug use by the victim himself; there was absolutely no effort to present any evidence of any behavior by any other person suggesting the existence of another suspect. Again, the evidence Defendant sought to present falls well short of the applicable test for admissibility. *See Williams v. State*, 681 N.E.2d 195, 198–99 (Ind.1997) (ruling that evidence of a victim's drug use is generally irrelevant

except in relation to the victim's mental capacity to recall the crime and to testify about it); *see also Pannell v. State,* 686 N.E.2d 824, 826 (Ind.1997) (holding that evidence of a murder victim's past drug use was irrelevant).

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ. concur.