Jason JONES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A05–1101–CR–66.

Court of Appeals of Indiana.

Dec. 5, 2011.

Caroline B. Briggs, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Jason Jones appeals his conviction for Class B felony dealing in methamphetamine and Class B misdemeanor visiting a common nuisance. Having evaluated Jones' claims, we conclude that the trial court did not abuse its discretion by admitting testimony and photographs in lieu of certain physical evidence that had been destroyed by law enforcement officers in accordance with Indiana Code section 35–5–5–5. Further, the trial court did not err by allowing a law enforcement officer to testify as a skilled witness regarding the one-pot reaction method of manufacturing methamphetamine. We affirm.

### Facts and Procedural History

During the evening hours of February 23, 2010, law enforcement officers arrived at the residence of Buddy Mossholder to execute a search warrant. Multiple officers entered through the front door of the home while Officer Travis Williams remained at the rear of the residence.

Officers located Mossholder and another individual, Timothy Farr, in the garage. Inside the garage, officers found ingredients commonly associated with the manufacture of methamphetamine, including pseudoephedrine, lithium batteries, instant ice compresses, multiple brands of drain cleaner, a coffee grinder, foil, blister packs, and camp fuel. Officers also observed a one-pot reaction vessel.[1] When Officer

---

1. Officer Jim Nielson testified that a "one[-]pot reaction is a way of cooking meth-

amphetamine in which all the ingredients are basically put into one container and thereby

Williams, who was stationed outside at the rear of the home, observed Jones attempting to exit the residence, he arrested Jones.

The State charged Jones with Class B felony dealing in methamphetamine and Class B misdemeanor visiting a common nuisance. Before trial, law enforcement officers utilized a Hazmat team to destroy some of the chemicals and chemically contaminated materials found in the Mossholder garage. At trial, Jones moved to exclude evidence of any item not received by him in discovery, claiming that law enforcement officers had failed to comply with Indiana Code section 35–33–5–5, which governs the disposition of property held as evidence and authorizes law enforcement to destroy chemicals, controlled substances, and chemically contaminated equipment associated with the manufacture of drugs. As a result, Jones argued, testimony or photographs offered in lieu of the destroyed physical evidence should not be admitted. The evidence at issue—a photograph of the one-pot reaction vessel and testimony regarding that vessel, as well as numerous photos and testimony regarding chemicals and other materials found in the garage—was admitted over Jones' objections. Jones also objected to the testimony of Officer Jim Nielson regarding the one-pot reaction vessel found in the garage.

On November 16, 2010, a jury found Jones guilty of both counts. The trial court entered a judgment of conviction and Jones' sentencing hearing was scheduled for December 22, 2010. On December 17, Jones filed a motion to continue the sentencing hearing, stating that he preferred to have appellate counsel, rather than his trial counsel, represent him at the hearing. Jones' motion was denied. On December 22, the court sentenced Jones to fifteen years, with five years suspended, for dealing in methamphetamine and 180 days for visiting a common nuisance. The trial court ordered the sentences to be served concurrently.

Jones filed a motion to correct errors, contending that the trial court erred by not continuing the sentencing hearing. Jones argued that had the sentencing hearing been continued, he would have called witnesses to testify to his good character, medical condition, and recent successful completion of an educational program. Jones' motion was denied. He now appeals.

## Discussion and Decision

Jones raises three issues on appeal. First, he contends that the trial court erred by admitting testimony and photographs depicting evidence that had been destroyed by law enforcement. Second, Jones argues that the trial court erred by allowing Officer Jim Nielson to testify as an expert regarding the one-pot reaction method of manufacturing methamphetamine. Third, Jones claims that trial court erred by denying his request for a continuance of his sentencing hearing and by subsequently denying his motion to correct errors.

### I. Destruction of Evidence

Jones contends that the trial court erred by admitting testimony and photographs depicting evidence that had been destroyed by law enforcement before trial. Jones argues that law enforcement violated statutory provisions governing the destruction of chemicals, controlled substances, and chemically contaminated equipment and thus, evidence offered in lieu of the destroyed items should not have been admitted. Specifically, Jones asserts that officers did not collect and preserve

[create] methamphetamine inside this reaction vessel." Tr. p. 32.

sufficient samples of the chemicals found in the Mossholder garage, did not adequately photograph the garage, and did not properly inventory the chemicals. He also claims that officers did not maintain certified records of the disposition of the evidence or satisfy the statute's requirement that two persons witness and attest to the destruction of evidence.

■■■■ Our standard of review of a trial court's determination as to the admissibility of evidence is for an abuse of discretion. *Smith v. State,* 754 N.E.2d 502, 504 (Ind. 2001). We will reverse only if a trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.* We will not reweigh the evidence and will consider any conflicting evidence in favor of the trial court's ruling. *Collins v. State,* 822 N.E.2d 214, 218 (Ind.Ct.App. 2005), *trans. denied.*

■■■ Criminal defendants have the right to examine physical evidence in the possession of the State under the Fourteenth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution. *Terry v. State,* 857 N.E.2d 396, 406 (Ind.Ct.App.2006), *trans. denied.* However, the State does not have "an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* (citing *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). In the context of hazardous chemicals and materials, tension arises between the practical need for destruction and the threat of prejudice to the substantial rights of a criminal defendant, which necessarily occurs when evidence is destroyed.

Indiana Code section 35–33–5–5 attempts to resolve this tension.[2] Specifically, Section 35–33–5–5(e) sets forth requirements that must be satisfied before evidence may be destroyed:

(e) A law enforcement agency may destroy or cause to be destroyed chemicals, controlled substances, or chemically contaminated equipment (including drug paraphernalia as described in IC 35–48–4–8.5) associated with the illegal manufacture of drugs or controlled substances without a court order if all the following conditions are met:

(1) The law enforcement agency collects and preserves a sufficient quantity of the chemicals, controlled substances, or chemically contaminated equipment to demonstrate that the chemicals, controlled substances, or chemically contaminated equipment was associated with the illegal manufacture of drugs or controlled substances.

(2) The law enforcement agency takes photographs of the illegal drug manufacturing site that accurately depict the presence and quantity of chemicals, controlled substances, and chemically contaminated equipment.

(3) The law enforcement agency completes a chemical inventory report that describes the type and quantities of chemicals, controlled substances, and chemically contaminated equipment present at the illegal manufacturing site.

The photographs and description of the property shall be admissible into evidence in place of the actual physical evidence.

---

2. It is likely the destruction of chemicals, controlled substances, and chemically contaminated equipment occurs often in practice, however, surprisingly few cases have addressed this issue, and we found no case specifically addressing the issues raised here by Jones.

The statute sets forth additional provisions concerning the maintenance of certified records and two-witness attestation:

> (f) for purposes of preserving the record of any conviction on appeal, a photograph demonstrating the nature of the property, and an adequate description of the property must be obtained before the disposition of the property. In the event of a retrial, the photograph and description of the property shall be admissible into evidence in place of the actual physical evidence. All other rules of law governing the admissibility of evidence shall apply to the photographs. (g) the law enforcement agency disposing of property in any manner provided in subsection (b), (c), or (e) shall maintain certified records of any disposition under subsection (b), (c), or (e). Disposition by destruction of property shall be witnessed by two (2) persons who shall also attest to the destruction.

Ind.Code § 35–33–5–5(e), (g). Jones argues that certain photographic and testimonial evidence should not have been admitted into evidence because officers failed to comply with subsections (e), (f), and (g). He claims that the remedy for the officers' violation of these subsections is exclusion of the evidence.

■ As it relates to the clerical requirements set forth in subsections (f) and (g),

we cannot agree.[3] The primary goal of statutory interpretation is to give effect to the intention of the legislature. *Westbrook v. State,* 770 N.E.2d 868, 871 (Ind.Ct.App. 2002). Words will be given their plain and ordinary meaning unless otherwise indicated by the statute. *Id.* When construing a statute, "[i]t is just as important to recognize what the statute does not say as it is to recognize what it does say." *State v. Prater,* 922 N.E.2d 746, 750 (Ind.Ct.App. 2010), *trans. denied.*

As it is currently written, subsections (f) and (g) provide no remedy for law enforcement's noncompliance. Where subsection (e) predicates admission of evidence upon satisfaction of the listed conditions, subsections (f) and (g) contain no such limiting language. In the absence of such language, we decline to premise admissibility of evidence upon the satisfaction of the requirements listed in this provision. Jones' arguments regarding the maintenance of certified records and the two-witness attestation requirement must fail.[4]

■■ We reach a different conclusion with regard to subsection (e). The subsection's structure, specifically the predicatory language "if all the following conditions are met," the three procedural requirements that follow, and the conclusion that the photographic or descriptive evidence "shall be admissible . . . in the place of the

---

**3.** Jones contests the trial court's use of the word "clerical" as it pertains to subsection (g). *See* Appellant's Reply Br. p. 4. He claims that subsection (g) is not a clerical provision because it does not refer to clerical duties. Jones defines clerical as "pertaining to clergyman; or pertaining to the office or labor of a clerk." *Id.*

We note that the trial court referred to subsection (g) as setting forth "clerical *procedures*" Tr. p. 79–80 (emphasis added). Black's Law Dictionary defines a clerk as "[a] public official whose duties include keeping records or accounts." *Black's Law Dictionary* 270 (8th ed.2004). Subsection (g) ex-

plicitly refers to the maintenance of records. We therefore adopt the trial court's characterization of subsection (g) as it pertains to clerical procedures.

**4.** Jones' challenges to law enforcement's compliance with subsection (f) must fail as the subsection has no applicability in this context. The use of the phrases "for purposes of preserving the record of any conviction on appeal" and "in the event of a retrial" indicate that the subsection's aim is to provide guidance for those charged with *post-trial* record keeping.

actual physical evidence" implies the evidence would be inadmissible if law enforcement failed to comply with the provisions of the subsection.

As to subsection (e), Jones contends that law enforcement officers did not preserve a sufficient quantity of the chemicals, controlled substances, or chemically contaminated equipment as required by Section 35–33–5–5(e)(1). Jones further alleges that officers did not take photographs of the illegal drug manufacturing site that accurately depict the presence and quantity of chemicals, controlled substances, and chemically contaminated equipment, in violation of Section 35–33–5–5(e)(2). Finally, Jones claims that a chemical inventory report was not completed as required by Section 35–33–5–5(e)(3).

Jones directs our attention to the testimony of Officer Joshua Mailer. Mailer testified that he did not collect samples from certain items of evidence, as he believed that sufficient evidence had already been gathered and that the item at issue was identical to another item at the scene, from which samples were taken. Tr. p. 44. Mailer also testified that he did not list the quantity of certain items found in the Mossholder garage in the property record. When asked if the quantity was listed elsewhere, Mailer indicated that the quantity would be indicated in photos taken of the manufacture site as well as in the case report. Id. at 52. Mailer also stated that he had not made note of the measurement of chemicals destroyed in the property record nor had he listed the "potential chemicals" destroyed. Id. at 53.

Having heard the testimony of law enforcement officers and having examined evidence presented with regard to this issue, the trial court concluded that the law enforcement officers had complied with the requirements of Section (e)(1) and (2), stating:

I think what's been introduced at this point shows that [law enforcement officers] have maintained a sufficient quantity of chemicals and controlled substances and chemically contaminated equipment to demonstrate that these items were associated with the illegal manufacture of controlled substances.... [I] think that the photographs accurately depict the present [sic] and quantity of the chemicals, controlled substances and chemically contaminated equipment within the illegal manufacturing site....

Tr. p. 77–78. We cannot say this determination was an abuse of discretion. Notably, extensive evidence of the manufacture of methamphetamine, more than forty exhibits, was recovered from the Mossholder garage. Though some of this evidence was destroyed, other items were preserved. The items preserved by law enforcement were available to Jones for examination and independent chemical testing. Officers also took numerous photos of the chemicals and equipment found in the garage. Jones does not claim that law enforcement's alleged failures deprived him of a fair opportunity to be heard in court or otherwise indicate that he was prejudiced by these alleged failures. Nor does Jones contend that the State destroyed potentially exculpatory evidence.[5] We cannot say that the trial court erred when concluding that sufficient quantities of evidence were maintained and the photos taken by officers adequately depicted the scene.

We recognize, as Officer Mailer admitted, that law enforcement did not fully comply with Section 35–33–5–5(e)(3), which requires the completion of a chemical in-

---

5. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

ventory report. However, Mailer testified that this deficiency could be rectified by examining other records, such as the case report or photographs of the manufacture site. The trial court found that officers had substantially complied with the statutory section, stating, "[I] think that the, between the case report and the returns, [law enforcement officers] have maintained a sufficient chemical inventory report and completed a sufficient one." *Id.* We cannot say this determination was an abuse of discretion. *See Bowles v. State,* 820 N.E.2d 739 (Ind.Ct.App.2005), *trans. denied.*

### II. Testimony of Officer Nielson

■ Jones contends that the trial court abused its discretion when, over his objection, it allowed Officer Jim Nielson to testify as an expert regarding the one-pot reaction method of manufacturing methamphetamine. In response, the State argues that Nielson offered testimony as a skilled witness, rather than an expert.

This Court will review a trial court's rulings on admission of evidence for an abuse of discretion. *Smith,* 754 N.E.2d at 504. An abuse of discretion occurs when the court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* We do not reweigh the evidence and consider any conflicting evidence in favor of the trial court's ruling. *Collins,* 822 N.E.2d at 218.

■ We have held that "any error in admission of evidence is harmless if the same or similar evidence has been admitted without objection." *Edwards v. State,* 730 N.E.2d 1286, 1289 (Ind.Ct.App.2000). Jones objected to Officer Nielson's testimony regarding the one-pot reaction method of manufacturing methamphetamine. However, Jones did not object to the testimony of Officers Shane Melton or Mailer, both of whom testified regarding the one-pot reaction method. *See* Tr. p. 188–89,

191, 216. Thus, any error was harmless. Nevertheless, we find Jones' argument unpersuasive and conclude that Officer Nielson's opinion was admissible.

Indiana Evidence Rule 701 provides for the admission of lay testimony as follows:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

We have previously recognized the testimony of a skilled witness as a subpart of lay witness testimony, distinguishing it from the opinion of an expert witness:

> "[Q]ualification under Rule 702 (and hence designation as an expert) is only required if the witness's opinion is based on information received from others pursuant to [Indiana Evidence] Rule 703 or on a hypothetical question." 13 Robert Lowell Miller, Jr., Indiana Evidence § 701.105 at 321 (2d 1995). The testimony of an observer, skilled in an art or possessing knowledge beyond the ken of the average juror may be nothing more than a report of what the witness observed, and therefore, admissible as lay testimony. This type of evidence is not a matter of "scientific principles" governed by Indiana Evidence Rule 702(b); rather, it is a matter of the observations of persons with specialized knowledge.

> Such witnesses possessing specialized knowledge are often called skilled witnesses or skilled lay observers. A "skilled witness" is a person with "a degree of knowledge short of that sufficient to be declared an expert under Ind. Evid. Rule 702, but somewhat beyond that possessed by the ordinary jurors." *Mariscal [v. State,* 687 N.E.2d

378, 380 (Ind.Ct.App.1997) ]. Skilled witnesses not only can testify about their observations, they can also testify to opinions or inferences that are based solely on facts within their own personal knowledge. In order to be admissible under Evidence Rule 701, opinion testimony of a skilled witness or lay observer must be "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." *Mariscal,* 687 N.E.2d at 380 (quoting Ind. Evidence Rule 701).

*Farrell v. Littell,* 790 N.E.2d 612, 617 (Ind. Ct.App.2003).

▆▆▆ Police officers may give skilled witness testimony based on their observations and experience. *See Hape v. State,* 903 N.E.2d 977, 992 (Ind.Ct.App.2009) (concluding that a state trooper was qualified to serve as a skilled witness where he had been a trooper for eight years, worked on more than 250 methamphetamine cases, and had served as a member of the clandestine methamphetamine laboratory clean-up team, where he received training related to this duty), *trans. denied; Davis v. State,* 791 N.E.2d 266, 269 (Ind.Ct.App. 2003) (holding that a police officer was qualified to testify as a skilled witness where he had investigated narcotics crimes for more than six years and served as the detective in charge of a narcotics unit, where he received special training in dealing with narcotics), *trans. denied.*

Officer Nielson has served as a detective for more than six years and is a member of the Kokomo Police Department Special Investigations Unit and Drug Task Force, which investigates clandestine methamphetamine laboratories. *See* Tr. p. 20. Nielson received specialized training related to the investigation of methamphetamine labs. *Id.* Nielson testified over Jones' objection that he observed what he believed was a one-pot reaction in the Mossholder garage. When asked to explain this reference, he stated that a "one[-]pot reaction is a way of cooking methamphetamine in which all the ingredients are basically put into one container and thereby creating methamphetamine inside this reaction vessel." Tr. p. 32. Nielson stated that he believed it to be a one-pot reaction vessel based upon its contents:

> The pink and white substance inside along with the mixture of the chemicals and what appeared to be little flecks, flakes inside. Those are all indicative of what I know *through my training and experiences* as a clandestine lab investigator to be a meth[amphetamine] lab.

*Id.* at 33 (emphasis added). When asked to describe the scientific composition of methamphetamine, Officer Nielson declined to do so, stating, "I cannot tell you the exact chemical composition because I'm not involved in the science of it, only the things that are necessary to its manufacture. I can tell you the items that are often found in a methamphetamine lab." *Id.* at 84.

Officer Nielson offered an opinion about the one-pot reaction method of manufacturing methamphetamine based upon his own observations at the Mossholder residence. This opinion was based on visual recognition of materials commonly used in the manufacture of methamphetamine, which he was able to identify due to his training and experience. Training and experience had also familiarized Nielson with the appearance of these materials when combined in a single vessel, which he knew to be the one-pot method. This information is beyond that of what an ordinary juror would possess. These facts lead us to conclude that Nielson testified as a skilled witness.

We therefore conclude that the trial court did not abuse its discretion by allowing Nielson to testify regarding the one-pot reaction method.

### III. Motion for Continuance

 Finally, Jones contends that the trial court erred by denying his motion to continue his sentencing hearing and by subsequently denying his motion to correct errors. Specifically, Jones claims that he believed his motion for a continuance had been granted, and as a result, he was surprised and unable to present mitigating evidence at the hearing, which was held as originally scheduled.

We initially note that Jones failed to object at his sentencing hearing to the denial of his motion for a continuance, and he did not claim surprise that the hearing was being held as scheduled. Because Jones now raises these arguments for the first time on appeal, he has waived the issue. *See Stokes v. State*, 908 N.E.2d 295, 301 (Ind.Ct.App.2009), *trans. denied.* Waiver notwithstanding, the trial court did not err.

 The decision whether to grant a continuance when the motion is not based on statutory grounds is within the discretion of the trial court. *Evans v. State*, 855 N.E.2d 378, 386 (Ind.Ct.App. 2006), *trans. denied.* We will not reverse such a decision absent a clear showing that the trial court has abused its discretion. *Id.* The appellant must overcome a strong presumption that the trial court exercised its discretion properly. *Id.* Further, the defendant must establish that he was prej-

udiced because of the trial court's denial of his motion. *Id.* at 387.

Jones filed his motion for a continuance five days before the hearing was to be held, stating that he would prefer to have appellate counsel, rather than his trial counsel, represent him at sentencing. The trial court denied his motion for continuance. Nevertheless, Jones argues that he believed that his motion for a continuance had been granted and therefore he was unprepared for the hearing. It is noteworthy that Jones does not claim that he was informed his motion had been granted. Jones cannot premise his claim of error upon his own unreasonable assumption that the filing of a motion for a continuance would automatically result in the granting of said motion. We therefore conclude that the trial court did not err in denying Jones' motion for a continuance.

Furthermore, Jones was not prejudiced by the denial of his motion to continue his sentencing hearing. While it is true that Jones could have called additional witnesses to testify regarding his good character, medical condition, and recent successful completion of an educational program, Jones was present at the sentencing hearing with counsel and could have testified to these facts. He chose not to do so. In addition, we note that the presentence investigation report described his medical condition, placing that information before the court in advance of sentencing. It was therefore not an abuse of discretion for the trial court to deny Jones' motion.[6]

Affirmed.

---

6. In his appellate brief, Jones renews a claim made in his motion to correct errors; that is, "[Jones] believes there to be another 'Jason Jones' that has been confused with some of his prior history" in the presentence investigation report. Appellant's Br. p. 33. However, Jones offers no information that would enable this court to evaluate his claim of mistaken identity. We also note that at his sentencing hearing, Jones indicated that he had time to review the presentence investigation report and did not believe there were any corrections to be made. *See* Tr. p. 296–301.

DARDEN, J., concurs.

FRIEDLANDER, J., Concurs in Result Without Opinion as to Issue I. Concurs as to Issue II and III.