


FILED

Sep 12 2024, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

DeMarcus Bush,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

September 12, 2024

Court of Appeals Case No.
23A-CR-2591

Appeal from the Marion Superior Court

The Honorable Shatrese M. Flowers, Judge

Trial Court Cause No.
49D28-1908-F1-31627

---

**Opinion by Judge Bradford**
Judges Crone and Tavitas concur.

**Bradford, Judge.**

## Case Summary

[1] In October of 2023, DeMarcus Bush was convicted of Level 3 felony rape and found to be a habitual offender. On appeal, Bush contends that the admission of evidence relating to the victim's belief that Bush had been in possession of a firearm during the rape violated double-jeopardy protections and the doctrine of collateral estoppel. Bush also contends that the trial court abused its discretion in admitting alibi-related evidence, including a partially handwritten alibi statement that he had submitted to the trial court and the testimony of the State's handwriting analyst. We affirm.

## Facts and Procedural History

[2] In July 2019, then-eighteen-year-old D.M. purchased a bicycle from Bush. After completing the purchase, D.M. exchanged Facebook information with Bush, who went by the name "Duce Duce" on the platform. Tr. Vol. III p. 165. A couple of days later, on July 25, 2019, Bush contacted D.M. via Facebook Messenger and invited him to a party. Bush provided D.M. with an address for an apartment complex, where D.M. went to meet up with Bush. Bush and D.M. entered one of the apartments, which "looked abandoned" to allegedly "wait[] on [Bush's] family." Tr. Vol. III p. 168.

[3] When D.M. attempted to leave the apartment, Bush stood in front of the door. D.M. "sort of froze" when he "heard [Bush] load a gun." Tr. Vol. III p. 168. Bush ordered D.M. "to get on all fours." Tr. Vol. III p. 168. D.M. got down

on his hands and knees, at which time Bush penetrated D.M.'s anus with his penis. Afterwards, Bush threatened "to kill [D.M.] if [he] ever told anybody." Tr. Vol. III p. 180. D.M. subsequently reported the rape to police and identified Bush as the individual who had raped him.

[4]    On August 12, 2019, the State charged Bush with having committed four crimes against … D.M. on July 25, 2019. Count I, rape as a Level 1 felony, asserted that Bush did knowingly or intentionally have other sexual conduct with D.M., when D.M. was compelled by force or the imminent threat of force, and Bush being armed with a deadly weapon, that is, a handgun. Count II, criminal confinement as a Level 3 felony, alleged that Bush confined D.M. while being armed with a deadly weapon. Count III, rape as a Level 3 felony, asserted that Bush did knowingly or intentionally have other sexual conduct with D.M., when D.M. was compelled by force or the imminent threat of force. Count IV alleged Bush pointed a firearm at D.M., as a Level 6 felony.

*Bush v. State*, 208 N.E.3d 605, 607 (Ind. Ct. App. 2023) (internal quotations and brackets omitted) ("*Bush I*"), *trans. denied*. The jury found Bush not guilty on Counts I, II, and IV but did not return a verdict on Count III. *Id.* at 608.

[5]    In November of 2021, Bush was re-tried on Count III. *Id.* Prior to the parties making their closing arguments and after Bush's counsel had indicated that counsel did not believe it was in Bush's best interests for him to sit through closing arguments, the trial court ordered Bush to be removed from the courtroom and placed in a holding cell. *Id.* at 610. Bush remained out of the courtroom while the jury was instructed. Bush was subsequently convicted of Level 3 felony rape and found to be a habitual offender. *Id.* On appeal, we

concluded that the trial court had "committed fundamental error when it excluded [Bush] from the proceedings during which the jury was instructed." *Id.* at 613. Bush's conviction was therefore reversed, and the matter remanded for retrial. *Id.*

[6] Bush was again re-tried on Count III on October 2–3, 2023. Bush attempted to exclude all references to a firearm from evidence, arguing that

> the only way that the jury's verdict from the acquittal trial makes sense, is if they believed that [the State] had not proven a gun, because the three counts that he was acquitted of were all the ones that included a firearm as a specific element. The one that they hung on, Count III, was the one that didn't include any reference specifically to a firearm as an element. So, the only way I can interpret that that would make sense, is they agreed that they weren't convinced about the gun, but they split on whether or not the act of rape occurred, because if the[y] differed about whether the act of rape occurred, they would have hung on everything. If they had not believed any of the Defendant's side or believed that the State's case was beyond a reasonable doubt, they would have convicted him of everything. They wouldn't have acquitted on some and hung on others. So, … any reference to the fact that the gun was present, similarly would be a double jeopardy issue.

Tr. Vol. III pp. 47–48. The trial court ruled that while D.M. could testify that "he heard a gun or what he thought to be a gun[,]" he could not testify to "any forced acts regarding a gun that [Bush had been] acquitted of." Tr. Vol. III p. 49. Bush also sought to exclude an alibi notice that he had prepared and filed as well as the testimony of a handwriting analyst who testified about whether the handwriting in the alibi notice was Bush's handwriting. The trial court

allowed admission of both the alibi notice and the expert's testimony over Bush's objection.

[7] At the conclusion of trial, the jury found Bush guilty of Level 3 felony rape, after which Bush admitted to being a habitual offender. The trial court sentenced Bush to sixteen years on the Level 3 felony conviction, enhanced by eleven years by virtue of Bush's status as a habitual offender, for an aggregate twenty-seven-year sentence.

# Discussion and Decision

[8] Bush contends that the admission of evidence relating to D.M.'s belief that he had been in possession of a firearm during the rape violated constitutional prohibitions against double jeopardy and the doctrine of collateral estoppel. Bush also contends that the trial court abused its discretion in admitting alibi-related evidence, including his partially handwritten alibi statement and the testimony of the State's handwriting analyst.

## I. Whether Evidence Relating to Bush's Alleged Possession of a Firearm Violated Double Jeopardy Prohibitions or the Doctrine of Collateral Estoppel

### A. Double Jeopardy

[9] The Fifth Amendment to the United States Constitution provides that "[n]o person shall … be subject for the same offense to be twice put in jeopardy of life or limb[.]" Similar to its federal counterpart, Article 1, Section 14 of the

Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense."

[10] In *Ashe v. Swenson*, 397 U.S. 436 (1970), the United States Supreme Court "squarely held that the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. U.S.*, 557 U.S. 110, 119 (2009). The Supreme Court subsequently recognized that *Ashe* had "pressed *Blockburger's*[1] boundaries by suggesting that, in narrow circumstances, the retrial of an issue can be considered tantamount to the retrial of an offense." *Currier v. Virginia*, 585 U.S. 493, 506 (2018). The Supreme Court went on to hold, however, that even at the "outer reaches" of its double jeopardy jurisprudence, it "has never sought to regulate the retrial of issues or evidence in the name of the Double Jeopardy Clause." *Id.* Thus, "the only available remedy is the traditional double jeopardy bar against the retrial of the same offense—not a bar against the relitigation of issues or evidence." *Id.* The Supreme Court further held that "[i]f a second trial is permissible, the admission of evidence at that trial is governed by normal evidentiary rules—not by the terms of the Double Jeopardy Clause." *Id.* at 507. Stated differently, "[s]o far as merely evidentiary facts are concerned, the Double Jeopardy Clause is inoperative." *Id.* (internal quotation and ellipsis omitted).

---

[1] *Blockburger v. U.S.*, 284 U.S. 299 (1932).

[11] Bush argues that he "was subjected to impermissible successive prosecution in violation of double jeopardy because the State was allowed to present evidence of his possession and use of a gun to the 2023 jury to convict him, but for which the April 2021 jury had already acquitted him." Appellant's Br. p. 11. Bush's argument is based on his claim that because the 2021 jury found him not guilty of Counts I, II, and IV, they must have determined that the State had failed to prove that he had been armed with a firearm at the time of the rape. Bush is essentially arguing that the 2021 jury necessarily resolved the question of whether he had possessed a firearm at the time of the rape in his favor. For its part, the State argues that "Bush conflates retrial and an impermissible successive prosecution." Appellee's Br. p. 12.

[12] As the State asserts, the record indicates that the State has consistently claimed, with regard to all counts—including Count III—that the force used by Bush during the rape was the presence of a firearm. *See Bush I*, 208 N.E.3d at 608 (recounting the prosecution's closing argument in the 2021 jury trial regarding Count III as indicating that D.M. had felt compelled by force due to the presence of what he believed to be a firearm). Given the State's reliance on the alleged presence of a firearm with respect to Count III for which the 2021 jury failed to reach a verdict, we cannot say that the 2021 jury's acquittal of Bush on Counts I, II, and IV necessarily meant that it had necessarily concluded that the State had failed to prove the presence of a firearm. As such, Bush's federal double jeopardy argument fails as the question of whether the challenged

evidence was admissible "is governed by normal evidentiary rules—not the Double Jeopardy Clause." *Currier*, 585 U.S. at 507.

[13] With respect to the Indiana Constitution, the Indiana Supreme Court has applied the actual-evidence test set forth in *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999), to determine whether a double-jeopardy violation occurred when evidence is presented on retrial following an acquittal on some charges.[2] In *Garrett v. State*, 992 N.E.2d 710 (Ind. 2013), the defendant was charged with two counts of rape. Defendant was acquitted of the first-in-time alleged rape but the jury was unable to reach a unanimous decision as to the second-in-time alleged rape. *Garrett*, 992 N.E.2d at 722. On retrial for the second-in-time alleged rape, the State presented "the same evidence of Rape A—the first-in-time rape—on which the State [had] relied in the first trial and upon which the jury [had] found Garrett not guilty." *Id.* at 723. On appeal, the Indiana Supreme Court held that "given the relative paucity of evidence on retrial concerning Rape B—the second-in-time rape—we conclude there is [a] reasonable possibility that the evidentiary facts used by the jury in the first trial to establish the essential elements of Rape, for which Garrett was acquitted, may also have been used on retrial to establish all of the essential elements of

---

[2] While the Indiana Supreme Court has overruled the application of the actual-evidence test in claims of double jeopardy arising from a single prosecution for multiple charges, it has reserved any conclusion as to whether the actual-evidence test remains the appropriate test for claims involving successive prosecutions. *See Wadle v. State*, 151 N.E.3d 227, 244 n.15 (Ind. 2020).

Rape for which Garrett was convicted" on retrial. *Id.* We cannot say the same here.

[14] Our decision in *Bush I* indicates that as to Count I, the State had alleged that Bush had "raped D.M. by performing oral sex on him when [D.M.] was held at gunpoint." 208 N.E.3d at 608. Conversely, the State had argued that the rape involved in Count III, *i.e.*, the penetration of D.M.'s anus by Bush's penis, had occurred after the actions alleged in Count I and that D.M. had "felt compelled by force" due to his belief that Bush had been in possession of a firearm. *Id.* While Bush's acquittals in Count I and Count IV, *i.e.*, rape and pointing a firearm at another, may lead to a reasonable inference that the jury had found the evidence insufficient to prove that Bush had held D.M. at gunpoint, the acquittals do not necessarily support the inference that the jury also believed that the evidence had been insufficient to prove that Bush had been in possession of a firearm. Likewise, the acquittal of Count II, *i.e.*, the criminal-confinement charge, does not necessarily support the inference that the jury had believed that the evidence had been insufficient to prove that Bush had been in possession of a firearm, as it could just as easily have determined that the State had failed to prove each of the essential elements of the crime of criminal confinement. As such, we cannot say that there is a reasonable possibility that the jury relied on the same facts to convict Bush of Count III as it had in acquitting Bush of Counts I, II, and III. The admission of D.M.'s testimony regarding his belief that Bush had been armed with a firearm therefore did not violate the double-jeopardy protections set forth under the Indiana

Constitution. Furthermore, unlike the situation in *Garrett*, the trial court explicitly limited the permissible testimony regarding the presence of a firearm during the 2023 trial, ruling that while D.M. could testify that "he heard a gun or what he thought to be a gun[,]" he could not testify to "any forced acts regarding a gun that [Bush had been] acquitted of."[3] Tr. Vol. III p. 49.

## B.     Collateral Estoppel

[15]     Bush alternatively argues that the admission of the challenged evidence violated the doctrine of collateral estoppel.

> Also referred to as issue preclusion, collateral estoppel has been characterized as an awkward phrase however, it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Collateral estoppel is not the same as double jeopardy, but rather it is embodied within the protection against double jeopardy. The traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime. In essence the doctrine of collateral estoppel precludes the Government from relitigating any issue that was *necessarily* decided by a jury's acquittal in a prior trial.

---

[3] We agree with the State that *Bush I's* invocation of the invited-error doctrine with respect to Bush's double-jeopardy argument in that case cannot be read as a conclusion that any reference to a firearm would amount to a double-jeopardy violation as "invited error typically forecloses appellate review altogether." *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019).

*McWhorter v. State*, 993 N.E.2d 1141, 1147 (Ind. 2013) (internal quotations and brackets omitted, emphasis in original). Further, the United States Supreme Court has held that "[t]he absence of appellate review of acquittals, we have cautioned, calls for guarded application of preclusion doctrine in criminal cases." *Bravo-Fernandez v. U.S.*, 580 U.S. 5, 10 (2016).

[16] As we have stated above with respect to Bush's double-jeopardy argument, we cannot say that the issue of whether Bush had been in possession of a firearm had *necessarily* been decided by the jury's acquittals in Counts I, II, and IV. Accordingly, D.M.'s testimony regarding his belief that Bush had been in possession of a firearm is not barred by the doctrine of collateral estoppel.

## II.  Whether the Trial Court Abused its Discretion in Admitting Alibi-Related Evidence

[17] Bush next contends that the trial court abused its discretion in admitting both his partially handwritten alibi notice and the testimony of the State's handwriting analyst. "We afford trial courts broad discretion in ruling on the admission of evidence." *Richardson v. State*, 189 N.E.3d 629, 635 (Ind. Ct. App. 2022). We review the trial court's ruling on the admission of evidence for an abuse of discretion and reverse "only where the decision is clearly against the logic and effect of the facts and circumstances." *Id.* "The trial court's ruling will be sustained on any reasonable basis apparent in the record, whether or not relied on by the parties or the trial court." *Washburn v. State*, 121 N.E.3d 657, 661 (Ind. Ct. App. 2019), *trans. denied*.

### A. Alibi Statement

[18] Bush argues that the trial court abused its discretion in admitting his alibi statement because it should have been excluded pursuant to Trial Procedure Rule 11. Trial Rule 11 provides, in relevant part, that

> Every pleading or motion of a party represented by an attorney shall be signed by at least one [1] attorney of record in his individual name, whose address, telephone number, and attorney number shall be stated, except that this provision shall not apply to pleadings and motions made and transcribed at the trial or a hearing before the judge and received by him in such form.

This is because once a defendant is appointed counsel, he speaks to the court through said counsel. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000).

[19] Bush asserts that because he was represented by an attorney at the time that he filed the alibi notice, which had not been signed by his attorney, with the court, it should have been excluded from the record. The State asserts that "[b]ecause Bush was represented by counsel when he sent his pro se notice of alibi to the trial court, there is no dispute that it was not a properly filed notice of alibi." Appellee's Br. p. 19. However, the State goes on to say "[b]ut that has no bearing on its admissibility as a statement made by Bush." Appellee's Br. p. 19.

[20] The State argues that Bush's purported notice of alibi was properly admitted as a statement of a party-opponent. *See* Ind. Evid. R. 801(d)(2). While the notice was not a properly-filed pleading before the trial court, we agree with the State that it qualified as a statement by Bush regarding his claimed whereabouts on

the date of the rape. It was therefore an admissible statement of a party opponent pursuant to Evidence Rule 801(d)(2). As such, we cannot say that the trial court abused its discretion in admitting it into evidence.

## B. Testimony of Handwriting Analyst

[21] Bush also argues that the trial court abused its discretion in permitting the State's handwriting analyst to testify, claiming that the analyst did not qualify as an expert witness pursuant to Evidence Rule 702(b). Evidence Rule 702 provides that

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

While there is no specific "test" or set of "prongs" which must be considered when determining reliability, some relevant factors to consider include (1) whether the technique has been or can be empirically tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error, as well as the existence and maintenance of standards controlling the technique's operation; and (4) general acceptance within the relevant scientific community. *McGrew v. State*, 682 N.E.2d 1289, 1292 n.5 (Ind. 1997).

[22] Bush asserts that the handwriting analyst's testimony and conclusions did not rest on reliable scientific principles and that "[t]he vagueness of [her] conclusion scale terms and her inability to provide any type of statistical probability to explain those terms leaves them virtually meaningless and therefore irrelevant and inadmissible." Appellant's Br. p. 22. For its part, the State argues that its handwriting analyst testified as a skilled witness, not an expert witness.

[23] "The Indiana Rules of Evidence contain two rules for opinion testimony—lay witness opinions under Rule 701 and expert witness opinions under Rule 702." *Wilburn v. State*, 177 N.E.3d 805, 810 (Ind. Ct. App. 2021). "A 'skilled witness' is a person with a degree of knowledge short of that sufficient to be declared an expert under Ind. Evid. Rule 702, but somewhat beyond that possessed by the ordinary jurors." *Jones v. State*, 957 N.E.2d 1033, 1040 (Ind. Ct. App. 2011) (internal quotation omitted). Evidence Rule 701 "encompasses both ordinary lay witness opinions and skilled witness opinions. The difference between skilled witnesses and ordinary lay witnesses is their degree of knowledge concerning the subject of their testimony." *Wilburn*, 177 N.E.3d at 811. The testimony of a skilled witness "is not a matter of 'scientific principles' governed by Indiana Evidence Rule 702(b); rather, it is a matter of the observations of persons with specialized knowledge." *Jones*, 957 N.E.2d at 1040 (internal quotation omitted). Skilled witnesses may be permitted to testify both about their observations and their "opinions or inferences that are based solely on facts within their own personal knowledge." *Id.* at 1041 (internal quotation omitted).

[24] The admissibility of a skilled witness's testimony is governed by Indiana Evidence Rule 701, which provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue." "The requirement that the opinion be rationally based on perception simply means that the opinion must be one that a reasonable person could normally form from the perceived facts, which are facts received directly through any of the witness's own senses[.]" *Satterfield v. State*, 33 N.E.3d 344, 352 (Ind. 2015) (internal quotations and brackets omitted). A witness's opinion is helpful "if the testimony gives substance to facts, which were difficult to articulate." *Id.* (internal quotation omitted). "Skilled witness testimony generally needs only rise to a relatively low bar in order to be admissible[.]" *Hawkins v. State*, 884 N.E.2d 939, 945 (Ind. Ct. App. 2008), *trans. denied*.

[25] The State called handwriting analyst Leeann Harmless to testify regarding her opinion as to whether the handwritten portion of the alibi statement had been written by Bush. Harmless has "a bachelor of arts degree in criminology from Purdue University" and formal training "with the Indiana State Police question document section." Tr. Vol. III pp. 215–16. Harmless "was basically an apprentice under the guidance of qualified document examiners within the section for the first two years" and her casework was supervised for the "following two years." Tr. Vol. III p. 216. She is certified by the American Board of Forensic Document Examiners and has completed "question

document courses" offered by the United States Secret Service and FBI and attended "conferences and workshops related to question document examination." Tr. Vol. III p. 216. Harmless testified that

> handwriting identification is based on the fact that no two people write exactly alike. Within that person's handwriting, there's certain unique characteristics. Those characteristics are noted in the way a person forms letters, the way they shape the letters, the way they connect the letters, the slant, their skill level, et cetera. It's these unique characteristics that are unique to everyone or unique to that individual and therefore, allow us to identify or eliminate a person as a writer.

Tr. Vol. III p. 216.

[26] The Indiana Supreme Court has held that "[o]ne need not be an expert to give his opinion as to the genuineness of the handwriting of a person if he is familiar with such person's handwriting and has seen the person write." *Spencer v. State*, 237 Ind. 622, 626, 147 N.E.2d 581, 583 (1958). "Proper familiarity with the standard of comparison is all that is asked for[.]" *Id.* After comparing the handwritten portions of Bush's alibi statement with a sample provided by Bush, Harmless opined that it was "probable" that Bush was "the writer of the hand printed portions" of the alibi statement. Tr. Vol. III p. 225. Harmless relied on her skill and training, to which she testified, in reaching this opinion. Her testimony, however, was not based on scientific principles but rather on her perception. It was also helpful as it supported the inference that Bush had made the statements contained in his alibi statement. Given Harmless's skill and training as a document examiner, we cannot say that the trial court abused its

discretion in determining that she had sufficient familiarity with the standard of comparison to give her opinion regarding the probability that Bush was the author of the alibi statement. Harmless's testimony was therefore admissible under Evidence Rule 701.[4]

[27] The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

Kevin C. Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Caroline G. Templeton
Supervising Deputy Attorney General
Indianapolis, Indiana

---

[4] While the State does not argue on appeal that Harmless could have qualified as an expert witness under Evidence Rule 702, we have previously concluded that the testimony of a handwriting analyst may be admissible as expert testimony under Evidence Rule 702 so long as the trial court is satisfied that the expert's opinion is based on reliable scientific principles that can be properly applied to the facts at issue, even if the testimony consists simply of observations of a person with specialized knowledge. *See Riley v. State*, 2018 WL 2375855 *5 (Ind. Ct. App. May 25, 2018), *trans. denied*.