Donnie CHILDERS, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 84S00–9711–CR–625.

Supreme Court of Indiana.

Nov. 19, 1999.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant, Donnie Childers, appeals his conviction for the murder[1] of three-year-old Wesley Washburn. He claims three errors, which we reorder and discuss as follows: (1) insufficient evidence; (2) denial of his right to counsel; and (3) an erroneous instruction.

### Sufficiency of the Evidence

The defendant was charged with "knowingly" killing Wesley Washburn by inflicting blunt force trauma.[2] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." IND. CODE § 35–41–2–2 (1993). *See Brown v. State,* 703 N.E.2d 1010, 1021(Ind.1998) ("The trial court could reasonably determine that by inflicting over twenty wounds Brown acted 'knowing' that his actions could produce death."); *Horne v. State,* 445 N.E.2d 976, 979 (Ind.1983) ("[A]n act is done 'knowingly' or 'purposely' if it is willed, is the product of a conscious design, intent or plan that it be done, and is done with an awareness of the probable consequences.").

The defendant now contends that the evidence was insufficient to prove that the defendant was aware of a high probability that his actions would result in Wesley's death. In reviewing a claim of insuf-

---

**1.** IND.CODE § 35–42–1–1 (1993).

**2.** The murder statute provides that "[a] person who … knowingly or intentionally kills another human being … commits murder, a felony." IND.CODE § 35–42–1–1 (1993).

ficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses; rather, we consider only the evidence that supports the verdict and draw all reasonable inferences from that evidence. *Riley v. State*, 711 N.E.2d 489, 494 (Ind.1999); *Jackson v. State*, 709 N.E.2d 326, 329 (Ind.1999). We will affirm the conviction if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Riley*, 711 N.E.2d at 494; *Jackson*, 709 N.E.2d at 329. In deciding whether a defendant was aware of the high probability that his actions would result in the death of the victim, we have held that the duration and brutality of a defendant's actions, and the relative strengths and sizes of a defendant and victim, may be considered. *Anderson v. State*, 681 N.E.2d 703, 708 (Ind.1997); *Gibson v. State*, 515 N.E.2d 492, 496–97 (Ind.1987).

■ The evidence favorable to the judgment is as follows. The defendant and Wesley's mother were living together in the defendant's house at the time. While Wesley's mother was away from the house from the evening of Friday, October 4, 1996, until the afternoon of Sunday, October 6, 1996, the defendant, an adult, was left to care for Wesley, a three-year-old child. When Wesley's mother left on Friday, Wesley was healthy, and his mother had not noticed any injuries to him. On Saturday night, Wesley's sister awoke and heard the defendant talking to Wesley in the bathroom and heard the defendant "spanking" Wesley. Record at 624. The defendant's nephew heard the defendant yelling loudly at Wesley and Wesley crying loudly. The defendant admitted that Wesley woke him in the middle of the night to tell him that he had a bowel movement in his pants and that the defendant then put Wesley "across his lap and whipped" him. Record at 635. The defendant also admitted that, shortly after this, Wesley got up and vomited two or three times. The defendant's nephew testified that on Sunday morning, when he woke Wesley to go to the bathroom, Wesley was holding his head "like it hurt." Record at 600. Wesley slept in bed nearly all day Sunday.

When Wesley's mother arrived home Sunday afternoon, she ran an errand and then checked on Wesley. She found him with swelling and bruising around his right eye, his right ear, and on his face. Additionally, his arms and legs were stiff and turned outward at awkward angles, and his eyes were "fluttering" and "rolling back in his head." Record at 445. When she could not wake Wesley, she called 911, and Wesley was taken to the hospital. At the hospital, the doctors discovered that he suffered from a fractured skull and a right front temporal subdural hematoma, a condition where blood collects between the skull and the brain, causing significant pressure on the brain. Wesley was transported to Riley Hospital for Children, where emergency surgery was performed. Several days later, Wesley died as a result of the hematoma.

Dr. John Pless, the forensic pathologist who conducted Wesley's autopsy, determined that the cause of death was "blunt force injury of the head and brain." Record at 733. Dr. Pless provided the following testimony regarding the various injuries to Wesley's head, internal organs, back, and buttocks. As to the head injuries that ultimately caused the fatal hematoma, Wesley was struck in the head two separate times, and one of the blows fractured Wesley's skull. Dr. Pless testified that much more force would be required to fracture a child's skull than an adult's skull because a child's skull is much more resilient. The injury was caused by a rounded or smooth object, consistent with a hand or fist. When a child suffers a head injury like the one Wesley suffered, there might be an initial recovery or "lucid interval" where the child might be able to move around, but any activity after that interval would be unlikely. The observations of Wesley's mother concerning the awkward position of his arms and his "fluttering"

eyes suggested that Wesley was having a seizure, which would have been caused by the injury to his brain. The doctor observed bruises and blunt force injury to Wesley's back, and these could have been caused by a hand or fist. A "linear patterned injury" was present on Wesley's buttocks, which is consistent with that produced by the fingers on a hand. Record at 723. Wesley also had extensive bruising to his liver, pancreas, spleen, stomach, and kidney, and the bruising, only a few days old, was likely the result of two or three blows to the abdomen. In Dr. Pless's opinion, Wesley could not have injured himself in this manner; rather, these were "non-accidental injuries." Record at 732. Wesley sustained the head injuries when his head was stationary, and thus they were not sustained as a result of a fall or other accident in which Wesley's head would have been moving at the time of the impact.

Two other health professionals testified. Kay Leach, a certified emergency nurse who participated in Wesley's initial treatment, testified that bruises found on Wesley's back appeared to be less than twenty-four hours old. Also, Dr. Roberta Hibbard, a doctor specializing in pediatric care and child abuse, examined Wesley the day after he had arrived and undergone surgery at Riley Hospital. She testified that Wesley's numerous injuries were not the type that Wesley could have caused to himself or that would have been caused by an accident; rather, they appeared to be intentional. Dr. Hibbard noted bruising and scraping on Wesley's arm that was consistent with being grabbed by a hand, struck by a hand, and scraped by fingernails. She also stated that "all of the bruises looked to me at the time I saw him

to be within a few days old." Record at 779.

In this case, the probative evidence supporting the verdict and the reasonable inferences drawn from that evidence are substantial. The evidence tends to establish that Wesley was healthy and without noticeable injury Friday afternoon. The defendant, an adult, struck Wesley, a three-year-old child, numerous times with his hand or fist, both on the head and various parts of his body. The blunt force injuries were accomplished by sufficient force to cause severe head trauma, bruise several internal organs, and eventually cause Wesley's death. Given the disparity in size and strength between the defendant and Wesley, and the number and severity of the wounds indicating the considerable force used in striking Wesley, a reasonable jury could have found, beyond a reasonable doubt, that the defendant was aware of a high probability that the blows he struck would result in Wesley's death.[3]

### Right to Counsel

The defendant contends that defense counsel provided ineffective assistance by failing to object to improper argument by the prosecutor and by failing to tender a jury instruction that would remedy the improper prosecutorial statement. The defendant claims that during closing argument, the State argued that the intent element of the murder could be satisfied if the defendant knew that he was striking the victim. The defendant argues that this was an erroneous statement of the law because the State must show that the defendant knowingly killed the victim, not just that he knowingly struck the victim, and that, left uncorrected, this statement would have informed the jury that it could return a guilty verdict even if the State did not prove all the elements of murder.

3. *Cf. Corbin v. State*, 250 Ind. 147, 150, 234 N.E.2d 261, 262 (1968) ("Any one with reasonable judgment would know that one of the blows of the magnitude of any of these numerous blows could have fatally injured this child, which apparently was sick at the time. Where such blows of such magnitude are repeated, any jury would have a right to conclude that the perpetrator intended to kill. Malice as a legal inference may be deducted from a perpetration of any cruel act, and the law presumes an individual intends the consequences of his acts.").

In order to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that because of counsel's errors the result of the proceeding is unreliable or unfair." *Harrison v. State*, 707 N.E.2d 767, 777 (Ind.1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993)). Because the failure to establish either prong will cause the claim to fail, *Brown v. State*, 698 N.E.2d 1132, 1142 (Ind.1998), we need not discuss the relative strength of any claimed prejudice under the second inquiry if we find no deficiency in defense counsel's performance under the first inquiry, *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

Isolated omissions or errors, poor strategy, or bad tactics are not in themselves evidence of deficient performance. *Brown v. State*, 691 N.E.2d 438, 446 (Ind.1998); *Wooden v. State*, 657 N.E.2d 109, 112 (Ind.1995). In this case, counsel for the defendant filed various motions, presented opening and closing arguments, formulated and followed a trial strategy, cross-examined witnesses, presented evidence, requested and received hearings outside the presence of the jury, objected to one of the court's tendered jury instructions, tendered a proposed jury instruction, and objected to the court's submission of exhibits to the jury during deliberation (after the jury sent a note to the judge regarding the admissibility of a statement). We find that defense counsel subjected the State's case to adversarial testing and that counsel's performance did not fall below an objective standard of reasonableness based on prevailing professional norms. We decline the defendant's claim of ineffective assistance of counsel.

### Jury Instruction on Reasonable Doubt

The defendant finally contends that the jury was erroneously instructed that it could convict if it was "firmly convinced" of the defendant's guilt and that this reasonable doubt instruction allowed the jury to convict the defendant based on proof that was less than the "beyond a reasonable doubt" standard required by Article I, Section 19 of the Indiana Constitution. Brief of Defendant–Appellant at 25. While he concedes that the instruction given was consistent with the reasonable doubt instruction expressly approved in *Winegeart v. State*, 665 N.E.2d 893, 902 (Ind.1996), he argues that *Winegeart* was based on federal constitutional considerations and that Article I, Section 19 of the Indiana Constitution requires a different, stricter definition of reasonable doubt.

The defendant tendered a reasonable doubt final instruction, but the trial court refused it, noting that this Court had approved the trial court's instruction. In his objection to the trial court's instruction, defense counsel argued that the instruction did not properly set out the burden of proof but never asserted any Indiana constitutional grounds for such a claim.

When objecting to an instruction, the objection at trial must be sufficiently clear and specific to inform the trial court of the claimed error, identifying both the claimed objectionable matter and the grounds for the objection. *Scisney v. State*, 701 N.E.2d 847, 848–49 (Ind.1998); *Mitchem v. State*, 685 N.E.2d 671, 675 (Ind.1997). Our trial rules provide:

At the close of the evidence and before argument each party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may claim as error the giving of an instruction unless he objects thereto be-

fore the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Ind. Trial Rule 51(C). This rule requires counsel to identify the specific objection and its grounds in order to enhance trial fairness, to enable the trial court to avoid error, to provide a sufficient opportunity to correct any potential error, and to facilitate effective appellate review. *Scisney*, 701 N.E.2d at 848; *Smith v. State*, 565 N.E.2d 1059, 1061 (Ind.1991); *Harvey v. State*, 546 N.E.2d 844, 846 (Ind.1989). Thus, to preserve error for appeal, a defendant must specifically state the grounds for his objection, or the claim is forfeited. *Moore v. State*, 669 N.E.2d 733, 742 (Ind. 1996). *See* Ind.Crim. Rule 8(B) ("No error with respect to the giving of instructions shall be available ... on appeal, except upon the specific objections made....."); *Ingram v. State*, 547 N.E.2d 823, 829 (Ind. 1989) (any grounds not raised at trial are waived for purposes of appeal).

■ Because no claim of state constitutional infirmity was presented at trial, we decline to consider it on appeal.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and BOEHM, J., concur. SULLIVAN, J., concurs as to the first and third issues but concurs in result as to the second issue.