## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 17 2015, 8:06 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Mark A. Bates | Gregory F. Zoeller |
| Office of the Lake County Public Defender | Attorney General of Indiana |
| Appellate Division | Katherine Modesitt Cooper |
| Crown Point, Indiana | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Luis Fuerte, | November 17, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 45A03-1501-CR-15 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, | The Honorable Salvador Vasquez |
| *Appellee-Plaintiff* | Trial Court Cause No. 45G01-1310-FB-103 |

**Crone, Judge.**

# Case Summary

[1] A jury found Luis Fuerte guilty of committing class B felony attempted incest, class C felony child molesting, and class D felony sexual battery against his granddaughter, who lived in his home and was sexually abused by him at least once a week for over a year. The trial court sentenced Fuerte to consecutive terms of twelve years for attempted incest and seven years for child molesting and a concurrent term of eighteen months for sexual battery, for an aggregate sentence of nineteen years executed.

[2] On appeal, Fuerte argues that the trial court erred in admitting certain evidence and in limiting his cross-examination of the victim; that his attempted incest and child molesting convictions violate Indiana's Double Jeopardy Clause; and that his sentence is inappropriate because he victimized only one person and had no criminal history. We find either waiver or no reversible error with respect to the evidentiary and cross-examination issues; that Fuerte's convictions do not violate Indiana's Double Jeopardy Clause; and that he has failed to persuade us that his sentence is inappropriate. Therefore, we affirm his convictions and sentence.

# Facts and Procedural History

[3] The facts most favorable to the jury's verdict follow. Fuerte's biological granddaughter, E.F., was born in March 1996. Her father is Fuerte's son. E.F. and her parents and brothers moved into Fuerte's house in Hammond in 1999. E.F.'s parents lived in the basement, and E.F. began sleeping in a bedroom

down the hall from Fuerte's second-floor bedroom after he divorced his wife in 2005. At least one evening a week, Fuerte would babysit E.F. and her brothers while their parents went on a date. E.F. was "really close" to Fuerte, who was "like another dad" to her. Tr. at 84.

[4] In July 2007, when E.F.'s parents were on a date, Fuerte came into her bedroom, took her into his bedroom, and locked the door. He undressed her, undressed himself, and told her to get on the bed. He fondled her breasts and touched her vaginal area with his fingers and erect penis. E.F. kicked him so that he could not penetrate her vagina. He told her, "[Y]ou can't tell anybody I'm doing this to you or else I'll get in a lot of trouble[.]" *Id*. at 87. E.F. did not tell anyone because she "was scared that [Fuerte] would hurt [her] family." *Id*. at 90. Fuerte subjected E.F. to similar molestations "52 to 60" times a year when her parents were out for the evening; she never allowed him to penetrate her vagina. *Id*. at 128. On other occasions, E.F. would wake up and feel that her nightclothes and bedclothes were "sticky and wet from [Fuerte] ejaculating, so [she] would know he was there." *Id*. at 89.

[5] One night, E.F.'s mother went upstairs to check on her sleeping daughter and saw Fuerte lying on E.F.'s bedroom floor in the dark in his underwear. In "shock," E.F.'s mother told her husband what she had seen and asked him to bring E.F. down to the basement. *Id*. at 174. The next day, Fuerte told E.F.'s mother, "I'm sorry for what you saw last night" and "it's never going to happen again." *Id*. at 176. E.F.'s parents asked E.F. if Fuerte or "anybody" had "ever done anything to her," and "she said no." *Id*. According to E.F.'s mother, they

"just kept on being a normal family [...] just like [they] always had." *Id*. at 177. E.F. did move into a basement bedroom, however.

[6] As the molestations continued, E.F. "began avoiding" Fuerte and "wouldn't talk to him." *Id*. at 91. She also began blocking her bedroom door with a dresser "to prevent him from getting towards [her]." *Id*. at 102. When her mother asked about this, E.F. replied that Fuerte "just got [her] really mad" and that she "put that in the way so he wouldn't come talk to [her]." *Id*. at 103. Fuerte continued molesting E.F. until approximately late 2008. *See id*. at 95-97 (E.F.'s testimony regarding when abuse stopped).

[7] In May 2009, a school coach told E.F. and her classmates that "we shouldn't let our problems ruin our lives and that we should do whatever we can to overcome them and that we will never be happy until we finally settle what it is that's bothering us." *Id*. at 97. Afterward, a "trembling" and "crying" E.F. told her seventh-grade teacher about Fuerte's sexual abuse. *Id*. at 272. The teacher informed the principal, who summoned E.F.'s parents to the school and told them what E.F. had said. E.F.'s parents went home and talked with E.F., who told them about the abuse. The senior pastor of the family's church told E.F.'s parents to avoid contact with Fuerte, so they locked the doors to the basement "to make sure there was no contact between [them]." *Id*. at 189.

[8] Soon thereafter, Fuerte was summoned to a meeting with the church's senior pastor and its Spanish-speaking pastor, Alfredo Deande. With Deande as interpreter, the senior pastor told Fuerte about E.F.'s accusations. According to

Deande, "[w]hen the senior pastor got done, [Fuerte] threw himself at the senior pastor's shoes, grabbed onto his ankles and started begging for forgiveness." *Id*. at 280. The senior pastor told Fuerte, "[Y]ou don't need to ask us […] for forgiveness. You've sinned against God and […] you've wronged your granddaughter." *Id*. at 281.

[9] After the meeting, Fuerte asked E.F.'s parents if he could talk with them and E.F. E.F.'s father said that Fuerte could talk with him and his wife but not with E.F. According to E.F.'s father, he and his wife and Fuerte "sat at the dining room table and [Fuerte] started sobbing and he said, […] I'm sorry for what I've done, please forgive me for what I've done." *Id*. at 246.

[10] E.F. gave a statement to law enforcement in July 2009, but the case fell through the cracks and the State did not file charges against Fuerte until October 2013. In November 2014, a jury found him guilty as charged of class B felony attempted incest, class C felony child molesting, class C felony criminal confinement, class D felony criminal confinement, and class D felony sexual battery. Based on double jeopardy concerns, the trial court entered judgment of conviction only on the attempted incest, child molesting, and sexual battery counts. The court sentenced Fuerte to consecutive terms of twelve years for attempted incest and seven years for child molesting and a concurrent term of eighteen months for sexual battery, for an aggregate sentence of nineteen years executed.

[11] Fuerte now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Fuerte has waived any argument regarding the admissibility of his requests for forgiveness from his pastor.

[12] Fuerte asserts that the trial court erred in admitting testimony regarding his requests for forgiveness from his pastor. Fuerte failed to object to this testimony at trial, however, and therefore this argument is waived. *Brown v. State*, 929 N.E.2d 204, 206-07 (Ind. 2010).[1] Waiver notwithstanding, we note that E.F.'s father testified without objection that Fuerte requested forgiveness from his family. Consequently, any error in the admission of evidence regarding Fuerte's request for forgiveness from his pastor can only be considered harmless. *See Jones v. State*, 957 N.E.2d 1033, 1040 (Ind. Ct. App. 2011) ("'[A]ny error in admission of evidence is harmless if the same or similar evidence has been admitted without objection.'") (quoting *Edwards v. State*, 730 N.E.2d 1286, 1289 (Ind. Ct. App. 2000)).

## Section 2 – Fuerte has failed to establish an abuse of discretion in the admission of alleged vouching testimony.

[13] Next, Fuerte contends that the trial court erred in admitting what he characterizes as vouching testimony from E.F.'s father and two investigating police officers. Our standard of review is well settled.

---

[1] Fuerte does not allege fundamental error, so we will not consider that issue.

> The general admission of evidence at trial is a matter we leave to the discretion of the trial court. We review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.

*Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013) (citation omitted).

## Section 2.1 – E.F.'s father

[14] Indiana Evidence Rule 704(b) states, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." At trial, the State asked E.F.'s father whether his wife's discovery of Fuerte in E.F.'s bedroom was a "red flag" or suggested that "something bad was going on[.]" Tr. at 238. E.F.'s father replied,

> No, no, nothing. Like I say, we questioned our daughter more than once, multiple times. But no, now that I see the events better, I mean -- it would have been very hard for her to say anything. I mean, I know this -- this has nothing to do with me, but I myself was molested, and I was afraid to tell my parents. I didn't tell them until I was like 30.

*Id*. Fuerte objected to this testimony but failed to state a basis for the objection.

[15] On appeal, Fuerte claims that E.F.'s father impermissibly vouched for E.F.'s credibility. As an initial matter, we agree with the State that Fuerte waived this argument by failing to state a basis for his objection. *See Childers v. State*, 719 N.E.2d 1227, 1232 (Ind. 1999) ("[T]o preserve error for appeal, a defendant

must specifically state the grounds for his objection, or the claim is forfeited."). Waiver notwithstanding, E.F.'s father did not vouch for her credibility; he merely offered an explanation as to why E.F. did not tell her parents that Fuerte was molesting her after he was discovered in her bedroom in his underwear.[2] As such, we find no abuse of discretion.

## Section 2.2 – Detective Billers

[16] Hammond Police Detective Mark Billers investigated E.F.'s accusations against Fuerte when they first came to light in 2009. At trial, witnesses testified about matters that had not previously been disclosed to the detective, such as E.F.'s mother's discovery of Fuerte in E.F.'s bedroom and E.F. blocking her bedroom door with a dresser. The State asked the detective whether such information "raise[d] any red flags for [him]." Tr. at 302. Detective Billers replied, "No, I wasn't very happy that I didn't know all that to begin with, but in the last 10 years or better, you know, and being a police officer in general, most people don't tell you everything all of the time initially." *Id.* Fuerte objected to this statement as "impermissible vouching." *Id.* at 303. The trial court agreed with the State that the detective had not "vouched for anybody" and overruled the objection. *Id.*

---

[2] Fuerte claims that the admission of E.F.'s father's testimony was fundamental error. Because the testimony was not vouching, it did not rise to the level of fundamental error.

[17] On appeal, Fuerte argues that Detective Billers's testimony "went directly to [E.F.'s] credibility in order to minimize … why the family did not disclose other relevant information." Appellant's Br. at 15. We disagree. Detective Billers did not testify to the truthfulness of the previously undisclosed information; he merely stated that he was not surprised that it had not been revealed to him earlier. We find no abuse of discretion here.

## Section 2.3 – Detective Thurmond

[18] Lake County Sheriff's Department Detective Lawrence Thurmond is a forensic interviewer with the Lake County Special Victims Unit who interviewed E.F. in July 2009. At trial, the State asked the detective about delayed reporting by molestation victims. Detective Thurmond testified that the "biggest reason" for delayed reporting by victims "is fear and also a sense of obligation to the person who actually did this to them." Tr. at 368. According to the detective, the sense of obligation could be financial or moral, "looking at this person as a father figure or a mother figure." *Id*. at 368-69. He further testified that the molester is "usually someone close as a family member or […] a friend of the family that's very close" and that trust in the molester is "a big factor." *Id*. at 369. When the State asked the detective to explain that statement, only then did Fuerte object on the basis of vouching. The trial court overruled the

objection and allowed the detective to answer the question.[3] Detective Thurmond stated,

> Usually when these incidents occur, there's a closeness like I was explaining earlier with the -- may not be a parent, but it could be somebody that's close and this child trusts this person and pretty much rely [sic] on this person for everyday needs, so there is a trust that's built there and they -- that goes with the obligation that they feel when it's time to actually report this. They don't want to report it because of the fear and obligation to this person that's close to them.

*Id.* at 370-71.

[19]     Fuerte makes no specific argument about the foregoing testimony, other than a bald assertion that it was "impermissible vouching for E.F.'s credibility." Appellant's Br. at 15. Assuming, without deciding, that Fuerte's objection was timely, we disagree. Detective Thurmond testified in general terms about delayed reporting by molestation victims and did not vouch, either directly or indirectly, for the truthfulness of E.F.'s allegations. *Cf. Wilkes v. State*, 7 N.E.3d 402, 405 (Ind. Ct. App. 2014) ("Under Rule 704(b), adults may not opine whether a *particular* child was 'prone to exaggerate or fantasize about sexual matters [because] indirect vouching testimony is little different than testimony that the child witness is telling the truth.'") (quoting *Hoglund v. State*, 962

---

[3] Fuerte quotes additional testimony by Detective Thurmond to which he failed to object. Appellant's Br. at 14 (citing Tr. at 371-75, 378). Any claim of error regarding this testimony is waived. *Brown*, 929 N.E.2d at 206-07.

N.E.2d 1230, 1237 (Ind. 2012)) (alteration in *Wilkes*) (emphasis added). The trial court did not abuse its discretion in admitting this testimony.[4]

## Section 3 – Fuerte has waived any claim of error regarding the trial court's limitation of his cross-examination of E.F.

[20] The State asked E.F. if she "start[ed] doing things to [herself]" as a result of Fuerte's sexual abuse. Tr. at 92. She replied,

> Yes. This changed my whole behavior. It affected me. I began to think that I was of no value. I -- there was a short period of time where I did begin cutting myself because I would be depressed and I would just -- I just pretty much hated my life because this was really -- I did not really know how to deal with it. And I wasn't saying anything. I wasn't speaking to anybody. It was just staying bottled up inside me. To distract the pain it was causing me emotionally and mentally, I began taking on a physical pain so that way I could stop thinking about it for a while.

*Id*. at 92-93.

[21] At a bench conference before E.F.'s cross-examination, Fuerte's counsel stated,

> I feel that the [S]tate has opened up the door in terms of when she's talking about this attempted suicide, cutting herself, things of that nature, I would like to bring out the fact that perhaps it was the runaway stuff that was causing her to attempt to commit suicide. Jury should be able to hear that side of it as well and not

---

[4] Because neither Detective Billers nor Detective Thurmond vouched for E.F.'s credibility, we reject Fuerte's fundamental error claim.

just it's only because of this molestation. She opened the door when she said commit suicide.

*Id*. at 105-06. The trial court replied, "She said she was hurting herself." *Id*. at 106. Counsel then asked, "Can I cross-examine and say maybe it's because you were running away, maybe it's because of the other guy." *Id*. The court responded, "Oh, no. You can't talk about another guy." *Id*.[5] Ultimately, the court ruled, "You can ask her that during this time period of the charging information [July 2007 to July 2009] whether she also ran away.[…] The other part [presumably, cutting herself] is out." *Id*. at 107-08. Counsel asked E.F. whether she ran away from home in 2009, and she replied, "That I could recall, once." *Id*. at 147. Counsel did not question E.F. about "the other guy" or cutting herself.

[22] On appeal, Fuerte complains that "[b]y limiting the cross-examination to only asking whether [E.F.] ran away from home during the two-year period when the molestation allegedly occurred," the trial court prevented him "from confronting [E.F.] about any other explanation for why she rebelled and acted out. Her statement that she reacted to the emotional pain inflicted by Fuerte went essentially unchallenged." Appellant's Br. at 18-19. "Although a defendant's right to present a defense is of the utmost importance, it is not absolute." *Manuel v. State*, 971 N.E.2d 1262, 1266 (Ind. Ct. App. 2012). "To

---

[5] The "other guy" is not mentioned elsewhere in the record, and thus his relationship to E.F. is unclear.

preserve a trial court's allegedly erroneous exclusion of evidence for appeal, it is 'appropriate and necessary for counsel to make an offer of proof on cross-examination if she believes the trial court has limited a line of questioning or has erroneously sustained an objection by opposing counsel.'" *King v. State*, 799 N.E.2d 42, 48 (Ind. Ct. App. 2003) (quoting *Arhelger v. State*, 714 N.E.2d 659, 666 (Ind. Ct. App. 1999)), *trans. denied* (2004), *cert. denied*. Fuerte failed to make an offer of proof here and therefore "has waived this issue on appeal." *Id.*[6]

[23]   Waiver notwithstanding, "erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties." *Seketa v. State*, 817 N.E.2d 690, 695 (Ind. Ct. App. 2004). Fuerte has failed to establish that the limitation of his cross-examination into this collateral matter substantially affected his rights.

## Section 4 – Fuerte's attempted incest and child molesting convictions do not violate Indiana's Double Jeopardy Clause.

[24]   Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Fuerte contends that his attempted incest and child molesting convictions violate double jeopardy principles under the actual evidence test enunciated in *Richardson v. State*, 717

---

[6] Indiana Evidence Rule 103 provides that a party may claim error in a ruling to exclude evidence "only if the error affects a substantial right of the party and … [i]f the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Here, the substance of the excluded evidence was not apparent from the context. It is possible, although entirely speculative, that E.F. had another reason for cutting herself besides Fuerte's sexual abuse. An offer of proof would have removed all doubt and preserved the issue for appellate review.

N.E.2d 32 (Ind. 1999). In *Richardson*, our supreme court stated that two offenses are the "same offense" in violation of Article 1, Section 14 of the Indiana Constitution if, with respect to the actual evidence used to convict, "the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*. at 49.

> Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id*. at 53. "Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination." *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002).

[25] Here, the State alleged that Fuerte committed class B felony attempted incest by attempting to engage in sexual intercourse or deviate sexual conduct[7] with E.F.,

---

[7] Deviate sexual conduct is defined in pertinent part as an act involving the penetration of a person's sex organ by an object. Ind. Code § 35-41-1-9.

knowing that she is related to him biologically as a grandchild, and that she was less than sixteen years old. Appellant's App. at 7 (charging information); Ind. Code § 35-46-1-3(a). The State alleged that Fuerte committed class C felony child molesting by performing or submitting to fondling or touching with E.F., a child under the age of fourteen years, with the intent to arouse or satisfy his or E.F.'s sexual desires. Appellant's App. at 7; Ind. Code § 35-42-4-3(b). The jury heard testimony that Fuerte attempted to penetrate E.F.'s vagina with his penis and fingers (i.e., attempted to commit incest) and also fondled her breasts and touched her vaginal area (i.e., committed child molesting) at least once a week for approximately a year and a half. Based on the foregoing, we cannot conclude that there was a reasonable possibility that the jury used the same evidence to convict Fuerte of both attempted incest and child molesting. Consequently, we find no violation of Indiana's Double Jeopardy Clause.

## Section 5 – Fuerte has failed to persuade us that his sentence is inappropriate.

[26] Pursuant to Indiana Appellate Rule 7(B), we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Fuerte contends that consecutive sentences are inappropriate in this case because he victimized only one person and had no

criminal history.[8] He also claims that he was a good provider for his family and is in poor health.

[27] Our supreme court has explained that

> [t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived "correct" result in each case. In the case of some crimes, the number of counts that can be charged and proved is virtually entirely at the discretion of the prosecution.[9] For that reason, appellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count.

*Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Fuerte bears the burden to persuade us that his sentence is inappropriate. *Brown v. State*, 907 N.E.2d 591, 594 (Ind. Ct. App. 2009).

---

[8] "It is within the trial court's discretion to impose consecutive sentences, but the trial court must find at least one aggravating factor before imposing consecutive sentences." *Harris v. State*, 964 N.E.2d 920, 926 (Ind. Ct. App. 2012), *trans. denied*. Here, the trial court found three aggravating factors, and Fuerte does not challenge their propriety. As such, he is not entitled to relief on this basis.

[9] In a footnote, the *Cardwell* court observed that "[c]hild molesting and drug offenses are often in this category because once a single crime is uncovered, it typically proves to be part of a lengthy pattern of activity." 895 N.E.2d at 1225 n.5. Even under a conservative estimate, Fuerte sexually abused E.F. approximately eighty times.

[28] Regarding the nature of the offenses, "we note that the advisory sentence is the starting point our legislature has selected as an appropriate sentence for the crime committed." *McBride v. State*, 992 N.E.2d 912, 920 (Ind. Ct. App. 2013), *trans. denied*. The sentencing range for the class B felony attempted incest conviction is six to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. The sentencing range for the class C felony child molesting conviction is two to eight years, with an advisory sentence of four years. Ind. Code § 35-50-2-6. Fuerte received a twelve-year sentence for the former and a consecutive seven-year sentence for the latter, for an aggregate sentence of nineteen years executed.

[29] Fuerte glosses over the nature of the offenses as "terrible and painful" and as involving only "a single victim." Appellant's Br. at 20. The single victim was Fuerte's granddaughter E.F., who was eleven years old when he began sexually abusing her every week in their home while babysitting her. Before the abuse started, E.F. and Fuerte were "really close," and "he helped rear [her] for a long time." Tr. at 84. He was "like another dad to [her]." *Id*. As a result of the sexual abuse, she stopped speaking to him and blocked her bedroom door so that he could not get in. She did not feel safe in her own home. The magnitude of the breach of trust alone merits a lengthy sentence.

[30] As for Fuerte's character, although he had no criminal history and appears to have been a good father and a hard worker, his weekly predations upon his young granddaughter in what should have been a place of safety and security vastly overshadow any of his positive qualities or his reputed ill health. He

scared E.F. into silence by saying that he would "get in a lot of trouble" if she told anyone about the abuse. Tr. at 87. Not only did he repeatedly molest her, but he also repeatedly ejaculated on her while she slept. The trial court found him to be manipulative and dishonest, and the evidence amply supports this assessment. In sum, Fuerte has failed to persuade us that his nineteen-year sentence is inappropriate. Therefore, we affirm his convictions and sentence.

[31] Affirmed.

May, J., and Bradford, J., concur.