## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 30 2015, 7:39 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Ronald J. Moore | Gregory F. Zoeller |
| The Moore Law Firm, LLC | Attorney General of Indiana |
| Richmond, Indiana | |
| | Christina D. Pace |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles D. Craft, | December 30, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 89A04-1507-CR-831 |
| v. | Appeal from the Wayne Circuit Court |
| State of Indiana, | The Honorable David A. Kolger, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 89C01-1403-FA-6 |

**Najam, Judge.**

# Statement of the Case

Charles D. Craft appeals his conviction and sentence for child molesting, as a Class A felony, following a jury trial. Craft raises two issues for our review, which we restate as follows:

1. Whether Craft preserved for appellate review his argument that the trial court abused its discretion when it admitted into evidence videotaped statements from the child victim.

2. Whether the trial court erred when it sentenced Craft.

We affirm.

# Facts and Procedural History

In November of 2009, Craft moved in with his girlfriend, Christina, and her two minor children, K.C. and C.S. At that time, K.C. was three years old. Christina and Craft subsequently had a child of their own, C.C. K.C. called Craft her "daddy." Tr. at 255.

During her relationship with Craft, Christina worked two jobs and left the children in Craft's care. During that same time, Craft occasionally held a job but never for long. In a typical day, Christina only saw the children shortly before they went to school in the morning.

Over the next four years, Craft repeatedly molested K.C. Craft's molestation of K.C. included oral, vaginal, and anal penetration, as well as fondling. K.C. would later not be able to recall how many times she had been molested by

Craft because there had been so many times, but she did recall specific details of some of the molestations. In particular, she recalled Craft telling her "how far to go down" when he had her perform oral sex on him. Appellee's Br. at 3 (citing State's Ex. 1). K.C. recalled feeling like Craft was "trying to choke" her with his "wee wee." *Id.* (quoting State's Ex. 1). K.C. recalled "gooey stuff" coming out of Craft's penis while he had her perform oral sex on him, and she recalled Craft telling her to "suck that motherf*cker" on at least one occasion. *Id.* (quoting State's Ex. 1). After each molestation, Craft would "pinky promise" K.C. that it would never happen again. *Id.* (quoting State's Ex. 1).

[6] On February 21, 2014, K.C. arrived at the Justice and Advocacy Center for Youth ("JACY") for a child forensic interview.[1] Amanda Wilson, the executive director of JACY and the primary forensic interviewer conducted K.C.'s interview using a nationally recognized "child first" protocol. Tr. at 165. In implementing this protocol, the interviewer asks the child only open-ended questions. The child is also provided with an easel with drawing paper, along with "anatomical diagrams, or drawings, to help clarify things with children." *Id.* at 172. The interviews were video recorded. In her interview with Wilson, K.C. relayed Craft's molestations of her.

[7] Thereafter, K.C. was taken to a nearby hospital and examined for sexual trauma. Dr. Richard Nevels observed that K.C. had no bruising, her hymen

---

[1] It is not clear from the record how K.C. ended up at JACY.

was intact, and she had no anal trauma. However, Dr. Nevels could not draw any conclusions based on his observations as to whether sexual abuse had occurred.

[8] In May, K.C. began seeing Amanda Harrison at Centerstone Counseling for therapy relating to the molestations. Harrison diagnosed K.C., in relevant part, with post-traumatic stress disorder. According to Harrison: "[K.C.] does everything she can to try to avoid talking about this trauma, the sexual abuse. She will talk about it but she doesn't like to. She . . . often dissociates . . . ." *Id.* at 211. In particular, K.C. would "shut[] down" whenever Harrison would "talk about [Craft's] name . . . or if we talk about the trauma or anything related to the sexual abuse" or "[i]f we talk about any of the sex acts that she engaged in." *Id.* at 213. These topics "seemed to re-traumatize" K.C. *Id.*

[9] The State charged Craft with child molesting, as a Class A felony. On April 29, 2015, the court held a hearing to determine whether K.C.'s videotaped forensic interview with Wilson would be admissible at trial. K.C. testified at that hearing and was subjected to cross-examination by Craft. Harrison testified and opined that having K.C. testify before the jury would cause her "serious emotional distress" and that K.C. would likely not be able to "reasonably communicate" to the jury. *Id.* at 39. And Wilson testified regarding the procedures and protocols in place during her interview with K.C. After the hearing, the court entered an order in which the court determined that K.C.'s videotaped interview would be admissible, along with a transcript of the

admissibility hearing, in lieu of having K.C. testify before the jury. Following the trial, the jury found Craft guilty as charged.

[10] At the ensuing sentencing hearing, the trial court stated as follows, in relevant part:

> the harm, injury, loss[,] or damage suffered by the victim of [the] offense was A, significant, and B, greater than the elements necessary to prove the commission of the offense. I find that that aggravating circumstance exists and in support of this finding[] the Court would cite to the following facts which were established during the trial of this cause.
>
> The undisputed evidence is the defendant began sexually abusing this child when she was four years old. . . . He regularly subjected her to oral, vaginal[,] and anal molestation. This child described in detail how this defendant would ejaculate in her mouth and on her belly as he forced her to perform oral sex on him. She described how he would clean his semen off her with a shirt so that no one would know. She described how awful it tasted. She described how she would choke as he forced more of his penis into her mouth. She described how her anus bled after he tried to put his penis in her, and how he wiped the blood off so that no one would know but them.
>
> She described . . . how he would have her pinky promise with him that it would never happen again[, o]nly to [have it] happen over and over again for four years. Then she repeated the dirty, disgusting words that he would say to her as he made her perform oral sex on him. This seven year old girl said suck that motherfucker. A child does not invent these things. A child does not invent this language. Does not invent these acts. The Court attaches significant weight to that aggravating circumstance.

> * * *

[T]he defendant was in a position of having care, custody[,] or control of the victim in this case. More specifically, the Court would note that the defendant was the live-in boyfriend of the victim's mother. As such, he had the daily responsibilities regarding the care and custody of this child. These responsibilities provided him with daily access[,] which enabled the defendant to sexually abuse this child on a regular basis. Upon reviewing the video, the Court concludes that the child was dependent upon this man for much of her daily care. Feeding, bathing. The Court finds that this defendant abused that position of trust and attaches significant weight to that aggravating circumstance.

And in support of that, I would cite to . . . a portion of that videotape where this child tells the interviewer that she's—she cries because she doesn't want him to get in trouble. She obviously loves him. She doesn't want to see him get in trouble, but she wants to tell the truth. And she feared that he would be punished for what he did to her. Again, that's not contrived. That's something that this child has to endure—endure and live with. So the Court attaches significant weight to that aggravating circumstance.

\* \* \*

I want to talk a little bit about the emotional and psychological effects this defendant's acts had on this victim. The therapist testified that[,] as a result of the defendant's chronic sexual abuse of this child, she now suffers from traumatic, Post[-]Traumatic Stress Disorder, and that she may . . . suffer from this disorder for life or for years to come. She currently sees her therapist on a regular basis.

\* \* \*

In this Court's estimation, . . . that this child suffers from PTSD as a result of the long-term or chronic sexual abuse of her by this defendant . . . that distinguishes this case from . . . other cases. [The psychologists] even testified that she suffered to such an extent that she could not possibly be expected to testify live in this case while this man was in the room. That's significant in this Court's estimation. So again, I'm going to find that that's an aggravating circumstance . . . .

So where does that leave me? . . . I can't get out of my mind suck this motherfucker. That's what I watched a seven year old girl say. It's disgusting. And Mr. Arnold [Craft's attorney], I disagree. I think he's the worst of the worst.

*Id.* at 361-62, 364-67. The court also found Craft's prior criminal history and recent violations of probation to be aggravating circumstances. The court then sentenced Craft to fifty years executed, the maximum sentence for a Class A felony. *See* Ind. Code 35-50-2-4 (2010). This appeal ensued.

## Discussion and Decision

### *Issue One: Admission of K.C.'s Videotaped Statements*

[11] On appeal, Craft first asserts that the trial court abused its discretion when it admitted into evidence K.C.'s videotaped statements to Wilson. The trial court admitted K.C.s videotaped statements pursuant to Indiana Code Section 35-37-4-6 (2014),[2] which states, in relevant part:

---

[2] This statute has subsequently been amended, but those amendments are not relevant to this appeal.

(a) This section applies to a criminal action involving the following offenses where the victim is a protected person under subsection (c)(1) . . . :

> (1) Sex crimes (IC 35-42-4).

> \* \* \*

(c) As used in this section, "protected person" means:

> (1) a child who is less than fourteen (14) years of age;

> \* \* \*

(d) A statement or videotape that:

> (1) is made by a person who at the time of trial is a protected person;

> (2) concerns an act that is a material element of an offense listed in subsection (a) . . . that was allegedly committed against the person; and

> (3) is not otherwise admissible in evidence;

is admissible in evidence in a criminal action for an offense listed in subsection (a) . . . if the requirements of subsection (e) are met.

(e) A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) . . . if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

> (1) The court finds, in a hearing:

> > (A) conducted outside the presence of the jury; and

(B) attended by the protected person in person or by using closed circuit television testimony as described in section 8(f) and 8(g) of this chapter;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

* * *

(B) is found by the court to be unavailable as a witness for one (1) of the following reasons:

(i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.

* * *

(f) If a protected person is unavailable to testify at the trial for a reason listed in subsection (e)(2)(B), a statement or videotape may be admitted in evidence under this section only if the protected person was available for cross-examination:

(1) at the hearing described in subsection (e)(1); or

(2) when the statement or videotape was made.

(g) A statement or videotape may not be admitted in evidence under this section unless the prosecuting attorney informs the

defendant and the defendant's attorney at least ten (10) days before the trial of:

> (1) the prosecuting attorney's intention to introduce the statement or videotape in evidence; and

> (2) the content of the statement or videotape.

(h) If a statement or videotape is admitted in evidence under this section, the court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement or videotape and that, in making that determination, the jury shall consider the following:

> (1) The mental and physical age of the person making the statement or videotape.

> (2) The nature of the statement or videotape.

> (3) The circumstances under which the statement or videotape was made.

> (4) Other relevant factors.

(i) If a statement or videotape described in subsection (d) is admitted into evidence under this section, a defendant may introduce a:

> (1) transcript; or

> (2) videotape;

of the hearing held under subsection (e)(1) into evidence at trial.

On appeal, Craft asserts that the trial court abused its discretion when it admitted K.C.'s videotaped statements because her statements lacked sufficient

indications of reliability and because the trial court failed to properly instruct the jury on the weight and credit to be given to the recorded statements.[3]

[12]     But we must conclude that Craft has not preserved those arguments for appellate review.  Under Indiana Evidence Rule 103(a):

> [a] party may claim error in a ruling to admit . . . evidence only if the error affects a substantial right of the party and:  (1)  . . . a party, on the record:  (A) timely objects . . . ; and (B) states the specific ground, unless it was apparent from the context.

Grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal.  *Grace v. State*, 731 N.E.2d 442, 444 (Ind. 2000).  The objection must be "sufficiently specific to alert the trial judge fully of the legal issue."  *Tapia v. State*, 753 N.E.2d 581, 588 n.13 (Ind. 2001).  "[T]he complaining party may not object in general terms but must state the objection with specificity."  *Marlatt v. State*, 715 N.E.2d 1001, 1002 (Ind. Ct. App. 1999).

[13]     "[I]t is incumbent upon a defendant to object to the introduction of the challenged evidence at trial and to specify the grounds upon which the objection is premised."  *Abner v. State*, 479 N.E.2d 1254, 1259 (Ind. 1985).  Identifying "the specific objection and its grounds" is required "to enhance trial fairness, to enable the trial court to avoid error, to provide a sufficient

---

[3] Insofar as Craft separately asserts that the admission of K.C.'s recorded statements denied him a fair trial, that separate argument is without cogent reasoning and is, therefore, waived.  Ind. Appellate Rule 46(A)(8)(a).

opportunity to correct any potential error, and to facilitate effective appellate review." *Childers v. State*, 719 N.E.2d 1227, 1232 (Ind. 1999). "Thus, to preserve error for appeal, a defendant must specifically state the grounds for his objection, or the claim is forfeited." *Id.* For example, the Indiana Supreme Court has held that an objection to the admissibility of evidence on the grounds that the State had laid "an inadequate foundation" was "too general to preserve this assignment of error for appeal." *Coleman v. State*, 465 N.E.2d 1130, 1135 (Ind. 1984).

[14]   Here, when the State sought to have the court admit K.C.'s recorded statements into evidence, the court asked Craft's counsel if he had any objections. Craft's counsel responded: "I have a standing objection at this time, Judge, pursuant to the statute." Tr. at 175. The trial court acknowledged the standing objection and then overruled the merits of Craft's objection.

[15]   But it is impossible to say what the merits of Craft's objection were. Prior to trial, Craft had filed a motion in limine to exclude K.C.'s recorded statements on the grounds that that they violated his state and federal rights to confrontation. *See* Appellant's App. at 69. However, on appeal Craft acknowledges that this was not the basis for his objection during trial and that he "has waived any issues as [they] relate[] to confrontation." Appellant's Br. at 10.

[16]   The pretrial hearing on the admissibility of K.C.'s statements also sheds no light on the basis for Craft's objection at trial. Indeed, Craft cites no portion of the

pretrial hearing, which spans more than one-hundred pages of the transcript, as demonstrative of the basis for his objection during trial. *See* Ind. Appellate Rule 46(A)(8)(a). As such, we cannot discern any context for his trial objection from this hearing. *See* Ind. Evidence Rule 103(a).

[17] Finally, and most significantly, Craft's objection during trial "pursuant to the statute" is broad and general. Tr. at 175. Craft even acknowledges as much in his appellate brief when he states that "the standing objection is not clear." Appellant's Br. at 10. Despite the lack of a specific trial objection, on appeal Craft proceeds to challenge the admissibility of K.C.'s statements under two self-selected provisions of a multi-faceted statute. Even if we were to agree with Craft that those two provisions were the most likely bases for his trial objection, appellate review is not premised on supposition. *See, e.g.*, *Childers*, 719 N.E.2d at 1232. As in *Coleman*, Craft's objection to the admissibility of the recorded statements "pursuant to the statute" was "too general to preserve this assignment of error for appeal." 465 N.E.2d at 1135. Accordingly, we must conclude that Craft has not preserved his arguments regarding the admissibility of K.C.'s recorded statements for our review.

[18] Waiver notwithstanding, we cannot say that the trial court abused its discretion when it admitted K.C.'s recorded statements. First, the trial court's assessment of the reliability of K.C.'s recorded statements was supported by both Wilson and Harrison, and Craft's argument on this issue merely asks this court to reweigh the evidence most favorable to the trial court's judgment, which we cannot do. *See, e.g.*, *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015). Second, upon

admitting the recording into evidence, the trial court immediately informed the jury of its duty to determine the weight and credit of that evidence pursuant to Section 35-37-4-6(h), and Craft's argument on this issue does not demonstrate how any error in the court's statements affected his substantial rights. *See, e.g.*, Ind. Evidence Rule 103(a). Thus, had he preserved these arguments for our review, we would have affirmed the admissibility of the recorded statements.

### *Issue Two: Sentencing*

[19] Last, Craft argues that the trial court erred when it ordered him to serve an executed term of fifty years. Specifically, Craft argues that his sentence is "inappropriate" because "the trial court placed too much weight on the nature of the offense and his criminal history"; the court gave too much "weight" to Craft's position of trust over K.C.; the court erroneously weighed the harm to K.C. because her harm has "no distinction" from "any other A Felony Child Molesting"; and the "fully aggravated sentence . . . is not supported by the weighing of these factors." Appellant's Br. at 18-19. Craft then suggests that "the trial court should have found no weighty aggravators and sentenced Mr. Craft to the presumptive sentence of thirty (30) years." *Id.* at 21.

[20] Craft misunderstands our current sentencing scheme.[4] The "presumptive" sentencing scheme, in which the trial court's finding and weighing of

---

[4] We note that Craft committed his crime no earlier than 2009, well after the current sentencing scheme came into effect.

aggravators and mitigators was reviewed on appeal for an abuse of discretion, no longer exists. *See Anglemyer v. State*, 868 N.E.2d 482, 485-88 (Ind. 2007). Under the current "advisory" sentencing scheme, "the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence." *Id.* at 491. As such, "a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors." *Id.* As Craft's challenge to his sentence on appeal is wholly premised on the weight the trial court assigned to aggravating circumstances, Craft's challenge must fail. *See id.*

[21] The failure on the merits of Craft's argument notwithstanding, Indiana Appellate Rule 7(B) permits an Indiana appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although Craft does not cogently challenge his sentence on appeal under Appellate Rule 7(B), we briefly note that, for the reasons stated by the trial court at Craft's sentencing hearing and excerpted *supra* at pages 5-7, we cannot say that Craft's fifty-year executed sentence is inappropriate in light of the nature of the offense or his character. Thus, we affirm his sentence.

[22] Affirmed.

Riley, J., and May, J., concur.