## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2018, 11:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chelsea Madden, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 31, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-1737 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. <br> 02D05-1712-F5-348 |

**Crone, Judge.**

# Case Summary

Chelsea Madden appeals her convictions, following a jury trial, for level 5 felony neglect of a dependent and class A misdemeanor domestic battery. She asserts that the trial court abused its discretion in instructing the jury and that the State presented insufficient evidence to support her neglect of a dependent conviction. Concluding that she has waived her claim of instructional error and further finding the evidence sufficient, we affirm.

# Facts and Procedural History

Madden married Roberto Calvillo in June 2016, and she filed for divorce in 2017. Madden was awarded provisional custody of the couple's minor child, D.M., in December 2017. At that time, although Madden and Calvillo still had an on-again-off-again relationship, Madden was primarily living with her boyfriend, Jason Zent, and D.M. was living with Calvillo. On December 3, 2017, Madden and Calvillo had a telephone conversation about their relationship, and Madden expressed her desire to reconcile with Calvillo. The pair arranged that Madden would come to Calvillo's home to spend time with him and three-year-old D.M.

Madden arrived at Calvillo's house, Calvillo let her in, and she began to play with D.M. Shortly thereafter, Madden grabbed D.M. and ran out of the house. Calvillo chased after Madden and took D.M. from her and turned to go back into the house. Madden pushed Calvillo in the back, causing him to lose his balance and fall. Both Calvillo and D.M. hit the ground. As Calvillo stood up

and walked back inside, Madden continued to punch him in the back. As a result of the fall, both of Calvillo's knees were scratched, his hand and elbow were swollen, and he had pain in his lower back. D.M. suffered a cut to his head. Calvillo called 911 to report the incident.

[4] Because D.M. was vomiting the following day, Calvillo took him to the doctor. A CT scan revealed no injuries to the skull bones, or intracranially. D.M. was diagnosed as having an abrasion to the left side of his scalp and a small hematoma on the back of the right side of his head.

[5] The State charged Madden with level 5 felony neglect of a dependent and class A misdemeanor domestic battery. Following a trial, the jury found Madden guilty of both charges. The trial court sentenced Madden to an aggregate term of five years, with two years suspended to probation. This appeal ensued.

## Discussion and Decision

## Section 1 – Madden has waived her claim that the trial court abused its discretion in instructing the jury.

[6] Madden first asserts that the trial court abused its discretion in instructing the jury. "Generally, jury instructions are within the sole discretion of the trial court, and we will reverse the trial court's decision only for an abuse of that discretion." *Harris v. State*, 884 N.E.2d 399, 402 (Ind. Ct. App. 2008), *trans. denied*. "Jury instructions are to be considered as a whole and in reference to each other, and we will not reverse the trial court's decision as an abuse of discretion unless the instructions as a whole mislead the jury as to the law of the

case." *Id*. (quoting *Brown v. State*, 830 N.E.2d 956, 966 (Ind. Ct. App. 2005)). "To be entitled to a reversal, the defendant must affirmatively show that the erroneous instruction prejudiced his substantial rights." *Id*.

[7]     Prior to the start of trial, the State tendered the following instruction:

> A person having the care, custody, or control of any child need not have specific intent to commit the crime of neglect of a dependent, but allowing an act inconsistent with the dependent's well-being to be committed will support a conviction for neglect of a dependent.

Appellant's App. Vol. 2 at 19.  At the conclusion of trial, Madden objected to the above instruction alleging that the Indiana pattern jury instruction on neglect of a dependent, which also was tendered to the court, "sufficiently covers the elements" and therefore this instruction "would tend to confuse the jury."  Tr. Vol. 2 at 203.  The trial court overruled Madden's objection and gave the instruction.[1]

[8]     On appeal, Madden now argues that the above instruction is an incorrect statement of the law and invaded the province of the jury.  Madden has waived these claims because she did not object on these bases at trial.  It is well settled that an objection to a jury instruction at trial "must be sufficiently clear and

---

[1] The trial court also gave the pattern jury instruction regarding the elements of level 5 felony neglect of a dependent.  Appellant's App. Vol. 2 at 36.  Moreover, the trial court instructed the jury on the definitions of knowingly and intentionally, *id.* at 42, and further instructed that "in construing any single instruction you should consider it with all other instructions given."  *Id*. at 34.

specific to inform the trial court of the claimed error, identifying both the claimed objectionable matter and the grounds for the objection." *Phillips v. State*, 22 N.E.3d 749, 762 (Ind. Ct. App. 2014) (quoting *Childers v. State*, 719 N.E.2d 1227, 1231 (Ind. 1999)), *trans. denied*. "In fact, Indiana Trial Rule 51(C) requires the parties to identify the specific objection to the instruction in part to provide the trial court the opportunity to correct an instructional error, if any." *Id*. Here, Madden raises wholly different grounds of instructional error than she did at trial. An argument is waived where the appellant presents one argument at trial and raises a different argument on appeal. *Id*. Accordingly, her claim of instructional error is waived, and we decline to address it.

## Section 3 – Sufficient evidence supports Madden's neglect of a dependent conviction.

[9] Madden next contends that the State presented insufficient evidence to support her neglect of a dependent conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id*. at 500.

[10] Indiana Code Section 35-46-1-4(a) provides in relevant part that a "person having the care of a dependent, whether assumed voluntarily or because of legal

obligation, who knowingly or intentionally: (1) places the dependent in a situation that endangers the dependent's life or health; commits neglect of a dependent[.]" The offense is a level 5 felony if it results in bodily injury. Ind. Code § 35-46-1-4(b)(1). A parent is charged with an affirmative duty to care for his or her child. *Lush v. State*, 783 N.E.2d 1191, 1197 (Ind. Ct. App. 2003). Both action and inaction can place a child in an undesirable position by inadequate performance of the affirmative duty of reasonable care. *McMichael v. State*, 471 N.E.2d 726, 732 n.2 (Ind. Ct. App. 1984).

[11] Here, the State presented sufficient evidence to support the conviction. The evidence shows that Madden was legally obligated to care for D.M., in that she is D.M.'s mother and she had even been awarded provisional custody of D.M. The evidence shows that she went to the home where D.M. had been staying with his father, and after playing with him for a bit, grabbed him and took him out of the house without warning. To make matters worse, when Calvillo prevented her from leaving with D.M. in this manner, Madden was the one who placed her child in an undesirable position and caused his injuries when she pushed Calvillo in the back, causing both Calvillo and D.M. to fall and hit the ground.

[12] Without citation to authority, Madden simply argues that the State presented insufficient evidence that she had "the care, custody and control" of D.M. at the time he was actually injured because it was Calvillo, and not her, who was physically holding D.M. when he fell and was injured. Appellant's Br. at 18. This argument is unavailing. There is ample evidence that Madden placed

D.M., a child that she had an affirmative duty to care for, in a situation that endangered his health and resulted in bodily injury. Sufficient evidence supports her conviction, and we affirm it.

[13] Affirmed.

Vaidik, C.J., and Mathias, J., concur.